THE PENWAG PROPERTY CO., INC., A CORPORATION OF THE STATE OF NEW YORK, AND THE PENWAG PROPERTY CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS, v. DAVID LANDAU, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Argued April 24, 1978—Decided July 10, 1978.

596

*Mr. Robert Alan Vort* argued the cause for appellant (*Messrs. Weston, Kravitz and Rank* and *Mr. Vort,* attorneys).

*Mr. Ronald Berman* argued the cause for respondents (*Messrs. Warren, Goldberg and Berman,* attorneys).

PER CURIAM. This litigation concerns a dispute between plaintiff landlord, Penwag Property Co., Inc., and its tenant, David Landau, the defendant, arising out of a lease agreement under which the tenant leased the first floor and base-

ment of a building known as 112–114 Nassau Street, Princeton, for use as a department store. The landlord instituted the action for possession and damages due to the tenant's failure to subordinate his lease to a certain mortgage. Defendant's answer questioned the validity of the mortgage and in a counterclaim asserted that the "action has been commenced without reasonable or probable cause and constituted malicious use of process."[1]

After an extensive trial, the trial court found that defendant had not breached the lease and that the mortgage in question was in fact subordinate to defendant's lease. It also entered a judgment in favor of defendant on his counterclaim, awarding defendant $19,000 compensatory damages, consisting of counsel fees and costs of defense of the main action, and $20,000 punitive damages. The Appellate Division unanimously affirmed the dismissal of plaintiff's claim. Judge Larner, writing for a majority of that court, reversed the judgment based on the counterclaim on the ground that defendant had not suffered a special grievance. 148 *N. J. Super.* 493 (App. Div. 1977). The dissenting judge held that the circumstances warranted the conclusion that a special grievance had been established.

Defendant filed an appeal, *R.* 2:2–1(a), and plaintiff a cross appeal, *R.* 2:3–4. We affirm essentially for the reasons expressed by Judge Larner.

 Malicious prosecution or malicious use of process as it is sometimes referred to when the underlying proceeding is civil rather than criminal[2] is not a favored cause of action because of the policy that people should not be inhibited

---

[1]Defendant's pretrial memorandum does not refer to this cause of action in his description of the nature of the action (item 1), factual and legal contentions (item 2), or legal issues (item 7). *R.* 4:25–3 (b). Further, the pretrial order does not mention the defendant's claim based on malicious use of process or malicious prosecution. *R.* 4:25–1(b).

[2]*W. Prosser, Torts,* § 120 at 853 (4th ed. 1971).

in seeking redress in the courts. *Lind v. Schmid*, 67 *N. J.* 255, 262 (1975). Justice (then Judge) Francis expressed the thought in this language:

> \* \* \* the law does not look with favor upon actions for malicious prosecution; it does not encourage them. The reason is embedded deeply in our jurisprudence. The courts must be freely accessible to the people. Extreme care must be exercised so as to avoid the creation of a reluctance on their part to seek redress for civil or criminal wrongs for fear of being subjected to a damage suit if the action results adversely. [*Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 139, 153 (Ch. 1951), aff'd 9 *N. J.* 605 (1952)]

Although we recognize the countervailing policy that groundless claims motivated by malice should entitle one to maintain such a cause of action, we believe that on balance the rule that the moving party must establish a special grievance should be retained. Special grievance consists of interference with one's liberty or property. *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* at 151–152. Counsel fees and costs in defending the action maliciously brought may be an element of damage in a successful malicious prosecution, but do not in themselves constitute a special grievance necessary to make out the cause of action. *Id.* at 175–176.

██ In addition to special grievance the plaintiff in an action for malicious prosecution of a civil suit must show that the suit was brought without reasonable or probable cause, that it was actuated by malice, and that it terminated favorably to the plaintiff. *W. Prosser, Torts*, § 120 at 850–856 (4th ed. 1971). Favorable termination did not exist when defendant's counterclaim was filed in this cause. Though plaintiff had not moved to strike that counterclaim, it should have been eliminated in the pretrial order. It is not appropriate to institute a suit or file a counterclaim until the litigation has terminated in favor of the party who asserts the malicious prosecution cause of action.

Affirmed.

PASHMAN, J., concurring. I concur in the Court's holding that in order for a plaintiff to establish a cause of action based upon an alleged malicious use of civil process (or its counterpart in the criminal context, malicious prosecution) he must demonstrate a "special grievance." This seemingly harsh rule is necessary to avoid having prospective plaintiffs discouraged from seeking vindication of their rights by the threat of such a retaliatory suit. I agree with the statement in the recent case of *Pantone v. Demos,* 375 *N. E.* 2d 480 (Ill. App. 1978), a suit by former medical malpractice defendants against the plaintiff in the prior suit and his counsel, that

\* \* \* public policy requires a safeguarding of a suitor's access to the courts without fear of easily maintained countersuits for bringing such actions.

[375 *N. E.* 2d at 484]

However, this particular plaintiff obviously acted in bad faith and improperly used the courts to prey upon its innocent tenant. I am loathe to see it escape without some sanction for its misdeed. Nevertheless, despite the unfairness in permitting this plaintiff to escape a judgment for malicious use of civil process, the overall administration of justice requires that this remedy be approved sparingly. Thus, I am constrained to join with the Court in relieving this plaintiff of the otherwise richly-deserved consequences of its wrongful conduct.

For similar reasons I join in the Court's ruling that an action for malicious use of process may not be maintained as a counterclaim in the action alleged to have been maliciously brought. The societal cost resulting from the deterrence of just claims by reason of the powerful leverage such a practice would afford defendants far outweighs the utility of any judicial economies it might produce.

Moreover, I am concerned at some of the ramifications of today's upholding of the "special grievance" rule. All

too frequently improperly motivated litigants, such as plaintiff herein, will be able to drain the financial resources of their opponents through burdensome and costly litigation having no legal or factual basis. Permitting such plaintiffs to escape any penalty so long as they are successful in carefully avoiding any action which would create a "special grievance" may be a necessary evil. However, some avenue of relief must be available to defendants so victimized.

Although presently precluded by *R.* 4:42–9, I believe that our courts should have the discretionary power to award attorney's fees to a prevailing defendant in certain defined classes of litigation upon a finding that the plaintiff's action was instituted vexatiously and in bad faith. This is generally the case in those jurisdictions which adhere to the so-called "American rule" of the common law. *See Christiansburg Garment Co. v. EEOC,* 434 *U. S.* 412, 415–417, 98 *S. Ct.* 694, 697–698, 54 *L. Ed.* 2d 648, 653–654 and n. 9 (1978); *Alyeska Pipeline Co. v. Wilderness Society,* 421 *U. S.* 240, 95 *S. Ct.* 1612, 44 *L. Ed.* 2d 141 (1975). Any danger that an undesirable chilling effect as described above would result from the fact that such a rule would be applied with the benefit of hindsight, *see Christiansburg, supra,* 434 *U. S.* at 422, 98 *S. Ct.* at 700, 54 *L. Ed.* 2d at 657, could be minimized by a requirement that in such case, the losing party's improper purpose be clearly and convincingly established. Such a rule would simultaneously prevent abuse of plaintiffs with arguably meritorious but unsuccessful claims, while ensuring that those who act in capricious disregard of the interests of justice by using the courts as a tool for harassment will not be able to indirectly accomplish their goal. Such persons should not be permitted to visit the potentially ruinous costs of litigation on an innocent party. I commend the issue to our Civil Practice Committee for appropriate consideration.

Pashman, J., concurring with result.

*For affirmance*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—7.

*For reversal*—None.