233 N.J. Super. 652 (1989)
559 A.2d 888
JAN R. EVANS AND MICHAELYN P. EVANS, H/W, PLAINTIFFS,
v.
THE PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, PAUL WIGAND, AND "DAVID DOLES," SAID NAME(S) BEING FICTITIOUS AND UNKNOWN; JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided May 5, 1989.
*653 Richard E. Yaskin for plaintiffs (Jan R. Evans, attorney).
Joshua Wall for defendants The Prudential Property and Casualty Insurance Company and Wigand (Cozen and O'Connor, attorneys).
GOTTLIEB, J.S.C.
Plaintiffs have moved to dismiss the counterclaim asserted by defendants The Prudential Property & Casualty Insurance *654 Company ("Prudential") and Paul Wigand ("Wigand"). Plaintiffs contend, under R. 4:6-2(e), that the counterclaim fails to set forth a claim upon which relief can be granted. They seek, additionally, reasonable attorney fees under N.J.S.A. 2A:15-59.1. This legislation is popularly called "the frivolous claims statute." Defendants argue that the counterclaim itself asserts their rights under N.J.S.A. 2A:15-59.1. The issues presented are: one, whether defendants may assert a right to an award of reasonable litigation costs and attorney fees under the frivolous claims statute in a counterclaim; and, two, if not, whether the court in this case should award attorney fees to plaintiffs.

THE PROCEDURAL BACKGROUND:
According to the complaint, a fire occurred at plaintiffs' residence on January 14, 1988. The structure, its contents and necessary alternative living expenses were insured under a homeowner's policy issued by Prudential. Wigand was Prudential's claims adjuster responsible for investigating and adjusting plaintiffs' fire loss.
In the complaint, plaintiffs have asserted eight causes of action arising out of the events concerning the investigation and adjustment of the loss. They contend that: one, Prudential breached the insurance contract by not living up to its responsibility to adjust the loss with plaintiffs and, additionally, violated the implied covenants of good faith and fair dealing; two, Prudential acted in bad faith and maliciously in its dealings with plaintiffs; three, Prudential infringed upon a fiduciary duty it owed to plaintiffs as the custodian of monies attributable to the policy benefits; four, Prudential and Wigand made fraudulent misrepresentations or negligently made false representations in inducing plaintiffs to purchase a Prudential home-owners insurance policy; five, Prudential violated the provisions of N.J.S.A. 56:8-1 et seq. (commonly called the Consumer Fraud Act) in the sale of the insurance policy and in adjusting the loss claim; six, Prudential's and Wigand's improper conduct *655 in adjusting the loss resulted in the intentional infliction of emotional distress; seven, Wigand tortiously interfered with plaintiffs' contractual rights with Prudential; and, eight, Prudential and Wigand violated this State's public policy, as memorialized in N.J.S.A. 17:29B-1 et seq. (commonly referred to as the Unfair Claims Settlement Practice Act).
The answer contends that, after plaintiffs and Prudential were unable to agree upon the amount of plaintiffs' loss, they followed the appraisal provisions of the insurance policy; and that when the appraisal awards were made, Prudential paid plaintiffs those awards. Moreover, the answer denies the validity of plaintiffs' claims and causes of action and insists that Prudential and Wigand fully complied with all of their contractual responsibilities. Additionally, the answer advances other separate defenses.
The counterclaim asserts that after payment of the appraisal award, plaintiff Jan Evans demanded a payment by Prudential of an additional $45,000 or he would file suit against it, but that Prudential determined not to pay the extra money. It goes on to claim that that plaintiff was or should have been aware that the appraisal procedure was binding, that he filed the complaint "for the improper purpose of extracting additional funds" from Prudential and that, as a result of the suit, Prudential has been compelled to expend monies in its defense. The counterclaim concludes by "request[ing] reimbursement for all fees and costs associated with the defense of this matter, and punitive damages as the court may deem just."
Both the complaint and the answer and counterclaim demand a trial of all issues by a jury.

CLARIFYING THE ISSUES:
In their motion to dismiss, plaintiffs argue that the counterclaim can be viewed as asserting a cause of action either for abuse of process or for malicious prosecution. Viewed either way, plaintiffs urge that no cognizable cause of action has been pleaded. Plaintiffs are correct in that position.
*656 If the counterclaim is viewed as asserting a cause of action for abuse of process, that cause of action requires "some further act after the issuance of process representing the perversion of the legitimate use of the process." Fielder Agency v. Eldan Constr. Corp., 152 N.J. Super. 344, 348 (Law Div. 1977). The counterclaim specifies conduct which is said to have taken place before, but not after, the issuance of process: that Jan Evans attempted to extract an additional $45,000 from Prudential by using the intimidation of a future law suit.
In Gambocz v. Apel, 102 N.J. Super. 123 (App.Div. 1968), certif. den. 52 N.J. 485 (1968), the Appellate Division was presented with an argument "whether the requirement of further acts is or should continue to be the law of this State." 102 N.J. Super. at 131. However, that court found it unnecessary to make that decision. This court, as well, need not address the issue, for a reason to be expressed shortly.
If, on the other hand, the counterclaim is classified as one asserting a cause of action for malicious prosecution, it too must fail since neither the underlying claim upon which it is grounded-the complaint  has been terminated in Prudential's favor, Penwag Prop. Co. v. Landau, 76 N.J. 595, 598 (1978), nor has a special grievance been alleged. Counsel fees and costs in defending an action do not constitute a special grievance. Id.
Defendants, however, contend that categorizing the counterclaim as one asserting a cause of action for either abuse of process or malicious prosecution is a mischaracterization. To the contrary, they deny it is either, but rather that it is one asserting defendants' rights under N.J.S.A. 2A:15-59.1. The court will proceed on the assumption that defendants are correct, even though plaintiffs disagree. This is the reason why this court, like the Gambocz court, need not decide whether the requirement of further acts is or remains an element of a cause of action for abuse of process.
*657 Therefore, the first issue is whether defendants may assert in a counterclaim their rights to litigation costs and attorney fees, pursuant to N.J.S.A. 2A:15-59.1. The court concludes that they may not. Accordingly, the second issue is whether the court should afford plaintiffs relief under N.J.S.A. 2A:15-59.1. Under the particular circumstances presented in this case, the court again answers in the negative.

THE COURT'S REASONING:
N.J.S.A. 2A:15-59.1 provides:
A. A party who prevails in a civil action, either as plaintiff, or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
B. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
C. A party seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit stating in detail:
(1) The nature of the services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services [rendered by?] the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs; and
(2) How much has been paid to the attorney and what provision, if any, has been made for the payment of these fees in the future.
The purpose of the statute, as set forth in the statement accompanying its legislative introduction, is to "[p]ermit[] the recovery of attorney's fees in a civil suit when the legal position *658 of [a] nonprevailing party was not justified."[1] The entire tenor of the statute is that it is conditioned upon two events occurring in the past.
The first event is that a position asserted by a party  whether in a complaint, a counterclaim, a crossclaim or a defense  was asserted by a nonprevailing party. The statute does not indicate precisely when one has attained the status of being a prevailing party. Logically, on the one hand, that status could be achieved when one prevails on a particular claim during the progress of the litigation or, on the other hand, it could be when one has ultimately prevailed at the trial level after the return of a verdict. A reasonable and grammatical reading of the statute would support either alternative.
That one could be characterized as a prevailing party during the progress of the litigation finds substantiation from the fact that, in section A of the statute, the judge is permitted to find that an asserted position is frivolous "at any time during the proceedings." Conversely, that one could be described as the prevailing party only after the completion of the litigation, at *659 least at the trial court level, follows from the implication from the phrase, used in beginning section A of the statute: "A party who prevails in a civil action ..." One who prevails, who triumphs, in a civil action need not be determined until the ultimate trial level conclusion of the litigation.
However, it is more responsive to the purpose underlying the statute to construe it to allow a prevailing party to be determined even during the processing of the case. Positions may be taken by the litigants which are adjudicated during the litigation. It may be that the court, contemporaneously with the adjudication, is then in the best position to decide whether the assertion of that position was frivolous. More important, if the design of the statute is to discourage litigants from asserting frivolous positions, that goal can be more effectively implemented by an early adjudication of that quality of a position. Indeed, an early determination may have a collateral effect; to impose upon a litigant the realization that a position is frivolous may encourage that litigant to rethink his or her entire position and, based on the analysis and the process of going through it, to participate in settlement discussions. It is a longstanding policy of the law to encourage settlements which would then terminate litigation. Judson v. Peoples Bank and Trust Co., 25 N.J. 17, 35 (1957).
The second event which must occur in the past is that the advanced position have been "frivolous." This is evident from the use of the past tense in section A of the statute, which concludes with the words "... a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." [Emphasis added.] The same language is repeated at the beginning of section B.
Additionally, the format established in the statute requires that the frivolous, advanced position have occurred in the past. It requires that there be one, a position advanced; two, pleadings, evidence or discovery presented; and, three, then a finding that that position was frivolous.
*660 Therefore, since a frivolous advanced position must have been articulated in the past, any right to relief under N.J.S.A. 2A:15-59.1 has not accrued for the purpose of asserting that right in a responsive pleading.
The court will not analogize the preclusion of the right to assert a claim of frivolous litigation in a counterclaim based on its resemblance to a cause of action for malicious prosecution. That is because a claim under the statute is not the same as a cause of action for malicious prosecution. To conclude that they are identical would convert, in effect, a prevailing party's right to relief under N.J.S.A. 2A:15-59.1 to nothing more than an expanded malicious prosecution action and thereby render useless the recent enactment. This reasoning is made obvious by contrasting the elements of a malicious prosecution cause of action with those arising under the statute.
A malicious prosecution cause of action has four separate elements which must be asserted: (1) the original claim was brought without reasonable or probable cause; (2) that claim was motivated by malice; (3) the underlying claim had been terminated favorably to the plaintiff in the malicious prosecution action; and (4) that plaintiff had suffered a special grievance. Penwag Prop. Co. v. Landau, supra., 76 N.J. at 598. The analogous elements of a claim under N.J.S.A. 2A:15-59.1 are: (1) the assertion by another party was frivolous, which can be established under section B of the statute by a finding by the judge that either (a) the underlying claim "was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury" or (b) the nonprevailing party knew or should have known that the claim had no reasonable legal or equitable basis nor could it be supported by a good faith argument for a change in the law; (2) the claim is being asserted by a prevailing party in a civil action; and (3) the prevailing party had to expend or have been committed to pay for litigation costs and attorney fees.
*661 The first two stated elements of a malicious prosecution cause of action are not fully identical, but merely comparable, to the two prongs of the first element of a statutory claim. For instance, to recover for another's malicious prosecution, one must show both the other's lack of probable cause in making an assertion and the other's malicious motive. The statutory claim, meanwhile, requires either that the other's assertion have been advanced "solely for the purpose of harassment, delay or malicious injury" or that that assertion have been without reasonable equitable or legal basis (as opposed to a reasonable factual basis).
This last enunciated predicate or basis highlights a potential distinction between malicious prosecution and the rights provided by statute. A determination of frivolousness under the statute may be grounded upon the failure to have asserted a position either which is then recognized or honored in law or equity or for which a good faith argument for its acceptance could be made. Clearly, the Legislature sought not to discourage the assertion of a conventional position or even a novel position which has some plausible foundation, but rather sought to dissuade aberrant and legally groundless assertions. The Legislature surely realized that many of the positive and beneficial advances guiding standards of conduct in our society have accrued directly as a result of litigants advancing what may have appeared to be an unconventional position which, although original, is determined subsequently to be valid. It is only those which, for example, have been expressly rejected in the past by the courts and there is no indication by the courts that a rethinking is appropriate, or there is no significant societal benefit to be obtained by a reversal or modification, that call for the payment of litigation costs and attorney fees. So, while under the statutory claim, either malevolence or lack of legal or equitable justification in taking a position is required, in a malicious prosecution cause of action malicious motive and lack of probable cause are each needed. And, traditionally, lack of probable cause has connoted a want of factual basis  as opposed *662 to the absence of a legal or equitable underpinning  in bringing a claim.
Likewise, the last two stated elements of a malicious prosecution cause of action are not exactly duplicative of, although very similar to, the second and third elements of the statutory claim. For example, as referred to earlier, "[c]ounsel fees and costs in defending the action maliciously brought may be an element of damage in a successful malicious prosecution, but do not in themselves constitute a special grievance necessary to make out the cause of action." Penwag Property Co. v. Landau, supra., 76 N.J. at 598. Under N.J.S.A. 2A:15-59.1, the expenditure, or commitment to pay for the expenditure, of litigation costs and attorney fees is itself the harm. The need that the underlying claim have been favorably terminated, however, is closely akin to allowing only a prevailing party to assert a claim under the statute.
While there are similarities, the distinctions are vividly significant. And it is, in large part, because of these differences, that the court concludes that it must not treat a claim under N.J.S.A. 2A:15-59.1 as identical to an assertion of malicious prosecution. That necessarily would also require that this court impute to the Legislature an intent to enact useless legislation. The presumption is to the contrary. Central Constr. Co. v. Horn, 179 N.J. Super. 95, 101-102 (App.Div. 1981).
So, while the right to relief under N.J.S.A. 2A:15-59.1 has not accrued so as to be able to assert that right in a responsive pleading, that conclusion is based on a review of the statutory language and format and not on the implications of an analogy to a malicious prosecution cause of action.
There is a second reason why a statutory claim should not be advanced as a counterclaim. As the court indicated earlier, both the complaint and the answer and counterclaim, as provided in R. 4:35-1 demand a trial by jury of all issues. But a jury cannot be the fact finder under the statute. It assigns that *663 function to the judge. As provided in R. 4:35-1(a), a trial by jury is available only for "any issue triable of right by a jury...." Thus, by allowing the statutory right to be asserted in a counterclaim or crossclaim, it may create confusion in the mind of a litigant or an attorney, to the end that he or she believes the issue may be tried by a jury, along with the other issues so triable in the case. It may also create an undesirable mixture of jury and nonjury questions. Precaution and prudence dictate a clear enunciation of the rule that the statutory right cannot be put forward in a counterclaim or crossclaim. Nor may it be asserted in a reply which exists, under R. 4:5-1, solely to allow a party "to allege any matter constituting an avoidance of [an affirmative] defense." The right given under N.J.S.A. 2A:15-59.1 does not contain a means of avoiding an affirmative defense. More properly it is characterized as being a method of alleviating the consequences of encountering a frivolous affirmative defense.
Finally, defendants' counterclaim requests punitive damages. It is apparent that punitive damages cannot be obtained in enforcement of the statutory right. The statute specifies that the award may be for "all reasonable litigation costs and reasonable attorney fees." This excludes any other form or type of relief. So, again, that neither litigants nor attorneys may be confused or enticed into believing that punitive damages are available under N.J.S.A. 2A:15-59.1, an assertion of the statutory right by a counterclaim or crossclaim must be rejected.
The conspicuous question now becomes: what should be done to assert the statutory right. Moreover, is it appropriate for this trial level court to suggest a method for that assertion?
Clearly, the Legislature in enacting N.J.S.A. 2A:15-59.1 did not establish the means for announcing and advancing a prevailing party's rights. It is proper, therefore, for this court to act under its inherent powers to fashion a means to implement *664 the statutory right. Cf., State v. Abbati, 99 N.J. 418, 428 (1985).
The avenue to be followed is that of a motion. A motion carries with it none of the disadvantages of a counterclaim or crossclaim. It can be filed in a timely and not premature manner, immediately following the establishment of the movant as a prevailing party.[2] It avoids confusion, by separating its procedures from those implicated by the issues of trial. And it establishes for those attorneys who practice both in this State's and the federal courts a singular form of asserting a prevailing party's rights. In this regard, the court notes Fed.R.Civ.P. 11 which, to a certain extent, is comparable in effect to the statute. That rule specifies that relief is to be initiated by a motion.
Finally, R. 1:6-2(a) begins by providing that "[a]n application to the court for an order shall be by motion...." In seeking fulfillment of one's statutory rights, one seeks an order to that effect. This, most accurately, reflects the language of section C of the statute: "A party seeking an award under this section shall make application to the court which heard the matter."
Having now determined that the counterclaim is invalid, the court now addresses the second question: whether it now should award attorney fees to plaintiffs.
It is clear that under section A of the statute, it is discretionary with the court whether litigation costs and attorney fees *665 are awarded.[3] The particular phraseology used in section A is "... may be awarded...." When the word "may" is used in a statute, it ordinarily has a permissive or directory meaning, as contrasted with the word "shall," which is generally mandatory. Bell v. Western Employer's Ins. Co., 173 N.J. Super. 60, 65 (App.Div. 1980).
In determining whether to exercise the permissive power to award attorney fees, the court must use "... sound discretion guided by law so as to accomplish substantial justice and equity...," In re Presentment of Bergen Cty. Grand Jury, 193 N.J. Super. 2, 9 (App.Div. 1984), as well as the particular circumstances presented. Higgins v. Polk, 14 N.J. 490, 493 (1954). The circumstances which are meaningful in this case are:
One, the relative recency of the statute. The statute became effective on December 26, 1988. This has significance because there have been no opinions by this State's courts which presently have been published and which interpret the statute. Obviously, had an opinion been available, it could have provided guidance for counsel in this case.
Two, the counterclaim was filed on February 23, 1989, which is less than two months after the effective date of the statute.
Three, there is little guidance available to an attorney by reference to Fed.R.Civ.P. 11. Rule 11 expressly provides that *666 a request for relief is by motion. The statute is silent on the route or method to be used for applying for relief.
Four, in light of the detailed analysis of the statute contained in this opinion, one could not directly analogize to the situation precluding malicious prosecution counterclaims.
Five, the counterclaim, as pleaded, does contravene the statutory relief allowable by demanding punitive damages.
Six, plaintiffs' attorney has expended effort and time in moving to strike the counterclaim.
Based on what has been presented to me in the pleadings and in the documents either supporting or opposing this motion, the court cannot find that the counterclaim was asserted in bad faith since it was not advanced solely for the purpose of harassment, delay or malicious injury. Additionally, and in light of the six enumerated circumstances given, the court cannot find that defendant knew or should have known that the counterclaim had no legal or equitable basis. Actually, the reason for the dismissal is that any statutory right cannot be demanded in a counterclaim which is a procedural dismissal. The court has not adjudicated the factual or legal merits of the counterclaim.[4]
For these reasons, the court declines an award of attorney fees.
NOTES
[1] Reference should be made to R. 1:4-5, which requires each pleading (other than indictments) to be signed by the attorney of record, that attorney's associate or a pro se party. R. 1:4-8 provides that the signature constitutes a certificate by the signer that "to the best of his [or her] knowledge, information and belief there is good ground to support [the pleading]; that it does not contain scandalous or indecent matter; and that it is not interposed for delay." The latter rule continues by allowing the pleading to be stricken if it is signed with intent to defeat the rule's purpose and, for a willful violation, authorizes appropriate disciplinary action or punishment for contempt. The rule was interpreted in Berthelsen v. Hall, 194 N.J. Super. 22, 26 (App.Div. 1984), to be the enumeration of the exclusive sanctions for vexatious litigation "until R. 1:4-8 is amended or other specific authority is given for the general imposition of sanctions...." N.J.S.A. 2A:15-59.1 is that "other specific authority." While it may be argued that allowing a sanction for the assertion of a frivolous position is exclusively within the rulemaking power of the Supreme Court under N.J. Const. (1947), Art. 6, Sec. 2, par. 3, and its interpretation in Winberry v. Salisbury, 5 N.J. 240, 244-255 (1950), that issue has not been addressed by the parties and, accordingly, this court shall not rule on the question. Three L Corp. v. Newark Bd. of Adj., 118 N.J. Super. 453, 455 (Law Div. 1972).
[2] While such a motion may be made immediately after a party prevails on a position, and the court determines that the position was frivolous under N.J.S.A. 2A:15-59.1, the court may also choose to withhold an award until the entire litigation is completed. For example, if a complaint asserts several causes of action, one of which is determined by the judge either before or during the trial to be frivolous, it may be inappropriate to direct an award until the completion of the proceedings when the court would be in a better position to decide what portion of the attorney's services was performed specifically in defense of that frivolous cause of action.
[3] The statute does not expressly provide who is to pay awarded litigation costs and attorney fees. In this regard, this court has experienced many situations where an answer asserts a litany of separate defenses. In meeting with the attorneys immediately before the trial is to begin, the court must review each separate defense to ascertain if it creates an actual issue in the case. Often, defense counsel indicates that the listing of defenses is a standard enumeration, obviously made so all-embracing as to cover every normal potential factual situation. While section A of the statute may be read as implying that the costs and fees are to be awarded against the nonprevailing person, it may lead to greater fulfillment of the policy underlying the statute to assess those fees and costs against the nonprevailing person's attorney where it is the attorney, not the party, who controls the tactical positions asserted in the answer.
[4] Once an adjudication of the causes of action in the complaint is made, defendant may properly apply to the court for an award under the statute.