11 F.3d 385
 25 Bankr.Ct.Dec. 8, Bankr. L. Rep. P 75,616
 Ralph VENUTO; Carol Venuto; Lightning Lube, Inc. d/b/a
Laser Lube; Automotive Management Systems, Inc., Appellants,
v.
CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI & STEWART, P.C.;
Charles C. Carella; Brendan T. Byrne; John N. Bain; John
G. Gilfillan, III; James D. Cecchi; Peter G. Stewart;
Carella, Byrne, Bain & Gilfillan, P.C., Appellees.
 No. 93-5105.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit LAR 34.1(a)
Oct. 4, 1993.
Decided Nov. 30, 1993.
 
 Jeffrey S. Nowak, Steven M. Kramer & Associates, Blackwood, NJ, and Steven M. Kramer, Steven M. Kramer & Associates, New York City, for appellants.
 William B. McGuire, Marianne M. DeMarco, Tompkins, McGuire & Wachenfeld, Newark, NJ, for appellees.
 PRESENT: HUTCHINSON, COWEN and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 This appeal presents three issues concerning the elements of a civil claim for malicious prosecution under New Jersey law. Proceeding from the more general to the more specific they are: (1) whether a "special grievance" continues to be a required element of such claim; (2) if so, whether special grievances are limited to deprivations of property that are the direct and immediate result of the malicious prosecution itself; and (3) whether deprivation resulting from a voluntary bankruptcy, as opposed to an involuntary bankruptcy, is sufficient. In dismissing appellants' complaint on appellees' 12(b)(6) motion, the district court answered "yes" to the first two questions but no to the third. The third question is one of first impression in this Court and, because the Supreme Court of New Jersey has not yet directly addressed it, we must predict its ruling. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). After considering appellants' arguments we find ourselves in agreement with the district court. We will, therefore, affirm. Our reasons follow.
 
 I.
 
 2
 Appellants, Lightning Lube, Inc. ("Lightning Lube") t/a Laser Lube, Ralph Venuto, Carol Venuto and Automotive Systems, Inc. ("Automotive Systems") (collectively "the Venutos"), initially filed their complaint asserting a civil claim for malicious prosecution in the Superior Court of New Jersey. Appellees, Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., Charles C. Carella, Brendan T. Byrne, John N. Bain, John G. Gilfillan, III, James D. Cecchi, Peter G. Stewart, and Carella, Byrne, Bain & Gilfillan (collectively "Carella"), are the law firm, its successor, and the members of the firm who represented the Venutos' adversary, Witco Corp., in the underlying action.
 
 
 3
 Carella removed the case to the district court pursuant to 28 U.S.C.A. Secs. 1441, 1452 (West Supp.1993) because the claims were related to Venuto and Lightning Lube's bankruptcy cases. It was automatically referred to the bankruptcy court. The district court later withdrew the reference because an action for malicious prosecution of a civil action is not within the bankruptcy court's jurisdiction over core proceedings.
 
 
 4
 Carella moved for dismissal of the Venutos' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The United States District Court for the District of New Jersey granted the motion because the Venutos had not alleged any "special grievance," a longstanding requirement of the tort of malicious prosecution as it has existed in New Jersey.
 
 
 5
 We have appellate jurisdiction pursuant to 28 U.S.C.A. Sec. 1291 (West 1993) over the Venutos' appeal from the district court's final order dismissing their complaint for failure to state a claim. Our scope of review is plenary.
 
 II.
 
 6
 The Venutos' claim for malicious prosecution of a civil action arose out of an earlier civil action captioned Lightning Lube, Inc. v. Witco Corp., 802 F.Supp. 1180 (D.N.J.1992), aff'd, 4 F.3d 1153 (3d Cir.1993) (Lube I ). Lube I involved a dispute over a franchise arrangement. Lightning Lube, which the Venutos owned, was a franchisor and Witco was a supplier to its franchisees.
 
 
 7
 The Venutos' complaint alleged that Carella, during the course of his representation of Witco in Lube I, maliciously asserted counterclaims and third-party claims that were ultimately dismissed. Specifically, the Venutos alleged that each of the claims Carella filed on Witco's behalf in Lube I was brought "maliciously and without probable cause, and for the purpose of harassing and destroying the plaintiffs." Joint Appendix ("App.") at 72. As a result of these actions, the Venutos asserted in the complaint that they had "suffered injury to each of th[eir] good name[s] and credit and ... [were] prevented from attending to their respective businesses...." Id. They also alleged that they had "incurred over $1 million dollars in costs and counsel's fees [in] defending the successive actions." Id. The complaint did not otherwise allege any deprivation of property or otherwise assert a "special grievance."
 
 
 8
 Carella therefore moved to dismiss the complaint for failure to state a claim. The Venutos did not seek leave to amend but in a two-paragraph memorandum opposing the motion to dismiss, they advanced the argument that they "were driven into bankruptcy as a result of the sham counterclaim." App. at 93. The Venutos did not initially mention the Maryland Stop Order or that their bankruptcy was voluntary. Later, in a sur reply memorandum opposing the motion to dismiss, they suggested for the first time that either the voluntary bankruptcy or the issuance of a Stop Order by the state of Maryland that prevented them from selling franchises there was a special grievance. At oral argument on the motion to dismiss they pressed their argument that the Stop Order the Maryland Division of Securities issued was a "special grievance" under New Jersey law. The district court properly exercised its discretion and refused to consider contentions first addressed in the sur reply memorandum. See In re Data Access Sys. Secs. Litig., 103 F.R.D. 130, 149 (D.N.J.1984).[1] Therefore we must first decide whether the Venutos' voluntary bankruptcy allegation of special grievance is properly before us.
 
 
 9
 Although the district court dismissed the complaint because it did not allege the Venutos had suffered a "special grievance" as a result of the counterclaim for fraud and the third-party complaints Carella had filed on Witco's behalf in Lube I, in doing so, it held that "even if Plaintiffs' complaint were amended to allege facts relating to the bankruptcy filing ... it still would not state a special grievance" since they "voluntarily filed for bankruptcy." App. at 169. The Venutos disagree, arguing that the district court drew an improper distinction between voluntary and involuntary bankruptcy. As a result, the Venutos chose to stand on their complaint and did not seek leave to amend to include their voluntary bankruptcy as a special grievance. Carella argues the Venutos have therefore waived the issue of whether their voluntary bankruptcy is a special grievance. We disagree. The district court chose to consider the issue and reject it when it was raised at oral argument.[2] We see no point in requiring them to seek leave to file a futile amendment. Moreover, because the issue has been fully briefed by both parties to this appeal, Carella does not appear to have suffered any prejudice. Therefore, we will consider on its merits the issue of whether the Venutos' voluntary bankruptcy is a special grievance under New Jersey law.
 
 III.
 
 10
 As recently as 1991, the New Jersey Superior Court, in setting out the elements of a claim for malicious prosecution of a civil action, continued to require a "special grievance." It described the elements of the tort as follows:the [suit] was brought without probable cause, that it was actuated by malice, that plaintiffs suffered a special grievance, and that the [ ] proceeding has been terminated favorably to the plaintiff.
 
 
 11
 Rubin v. Nowak, 248 N.J.Super. 80, 590 A.2d 249, 250 (N.J.Super.Ct.App.Div.1991) (citing Penwag Prop. Co. v. Landau, 76 N.J. 595, 388 A.2d 1265 (1978) (emphasis added)); see also Grodjesk v. Faghani, 104 N.J. 89, 514 A.2d 1328, 1330, 1335 (1986).[3]
 
 
 12
 The element of "special grievance" is longstanding. It was first recognized in Potts v. Imlay, 4 N.J.L. 377, 380-81 (N.J.1816). There, following English precedent designed to discourage litigation about the propriety of earlier legal actions as well as to avoid the practical inhibition that the threat of actions for abuse of process, or civil claims for malicious prosecution, would have on otherwise meritorious claims, the court declared that an action for malicious civil prosecution does not lie "unless the defendant has, upon such prosecution been arrested without cause and deprived of his liberty, or made to suffer other special grievance different from, and superadded to the ordinary expense of a defence." Id. at 381; see also SBK Catalogue Partnership v. Orion Pictures Corp., 723 F.Supp. 1053, 1068 (D.N.J.1989) (ordinary litigation costs do not constitute "special grievance").[4] The New Jersey courts have consistently defined "special grievance", with examples as follows:
 
 
 13
 Special grievance in the context of malicious civil litigation has been held to consist of the interference with a party's personal liberty or property. Examples of such interference or deprivation sufficient to constitute the requisite special grievance are the appointment of a receiver, filing of a petition in bankruptcy, granting of an injunction, issuance of a writ of attachment or writ of replevin, filing of a lis pendens, issuance of an order of arrest, wrongful interference with possession or enjoyment of property, etc.
 
 
 14
 Penwag Prop. Co. v. Landau, 148 N.J.Super. 493, 372 A.2d 1162, 1166 (N.J.Super.Ct.App.Div.1977) (emphasis added & citations omitted), aff'd., 76 N.J. 595, 388 A.2d 1265 (1978). Other civil actions which have led to interference with personal liberty or property sufficient to establish "special grievances" for purposes of malicious prosecution actions include: (1) the institution of disbarment proceedings, Toft v. Ketchum, 18 N.J. 280, 113 A.2d 671 (N.J.1955); (2) the filing of license revocation proceedings before the Director of the Milk Industry, Rainer's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 117 A.2d 889 (1955); and (3) the granting of an injunction or restraining order or the filing of a lis pendens, Mayflower Indus. v. Thor Corp., 15 N.J.Super. 139, 83 A.2d 246 (N.J.Super.Ct.Ch.Div.1951), aff'd, 9 N.J. 605, 89 A.2d 242 (N.J.1952). These deprivations all have one thing in common--they result directly from process issued in the proceeding that is said to have been malicious. Thus, the district court decided involuntary bankruptcy is a special grievance because the loss of control over the bankrupt's property that it causes is the direct result of the allegedly malicious civil proceeding that the tortfeasor initiated when he filed an involuntary petition in bankruptcy court. The loss of control a voluntary bankrupt suffers, however, when it files its own petition is not a special grievance because it is only an indirect result of the action that forced the debtor to seek the protection of the bankruptcy court.
 
 
 15
 Because the Supreme Court of New Jersey has not decided that a voluntary bankruptcy, unlike an involuntary one, is not a special grievance, we, like the district court, must predict what it would do. We believe New Jersey would draw the same distinction between a voluntary and involuntary bankruptcy as the district court because the interference with a debtor's property that follows a voluntary bankruptcy is not the direct result of process issued in the underlying action that is said to be malicious. An involuntary bankruptcy, on the other hand, is the process that directly causes interference with property that is the "special grievance."
 
 
 16
 The Venutos' reliance on Engel v. CBS Inc., 981 F.2d 1076 (9th Cir.1992), in which the United States Court of Appeals for the Ninth Circuit reversed an order dismissing a complaint that failed to set forth a cause of action for malicious prosecution under New York law, which also requires a showing of "special injury," is inapposite. The Ninth Circuit stated:
 
 
 17
 Engel continued to represent his client in the New York breach of contract action, and secured a large recovery for his client. The preliminary injunction sought by CBS was not granted; declaratory relief was denied, and throughout the litigation Engel represented his client without significant interference. Engel thus far failed to plead damage sufficient to show special injury under New York law.
 
 
 18
 Nevertheless, New York decisional authority suggests there may be some narrow grounds upon which a plaintiff might be able to state a valid claim for malicious prosecution without showing injury to person or property. Engel has never had an opportunity to plead his claim knowing that New York law applies, and we hesitate to conclude that Engel cannot allege any set of facts that would state a claim for malicious prosecution under New York law. These two factors convince us that, on remand, the district court should allow Engel to amend his complaint, if he can, to state a claim under New York law.
 
 
 19
 Id. at 1083.
 
 
 20
 The special damage or injury New York requires can be a "significant interference" with one's business. New Jersey law is different. It requires a direct injury to person or property, and a voluntary bankruptcy is not the direct cause of the interference with the debtor's control over its property that occurs upon adjudication as a bankrupt. It does not directly result from the underlying malicious civil action that is said to indirectly cause the financial difficulties that in turn led to the decision to seek protection in the shelter of a bankruptcy court. We, therefore think that New Jersey's "special grievance" requirement would not be satisfied by the kind of indirect interference with a debtor's business or its possession of property that results from its own voluntary bankruptcy.
 
 
 21
 The Venutos rely on a concurring opinion in Toft v. Ketchum, 113 A.2d 671 (N.J.1955) (Jacobs, J., concurring). We are unpersuaded. There, Justice Jacobs referred to an English authority which stated actions for malicious prosecution may be maintained not only for wrongful criminal proceedings but also for "unwarranted bankruptcy or liquidation proceedings." Id. at 677. The Venutos argue that they suffered an "unwarranted bankruptcy" as a result of Carella's counterclaim and if the Ketchum court had wanted to distinguish voluntary from involuntary bankruptcies it would have expressly done so. This argument implies that any bankruptcy which is "caused" by the malicious action is "unwarranted." We do not think the New Jersey Supreme Court will relax the requirement of a special grievance that far. On that point, the case of Fiedler Agency v. Eldan Construction Co., 152 N.J.Super. 344, 377 A.2d 1220 (N.J.Super.Ct.Law Div.1977), is apropos. There, the court considered "whether injury to a defendant's reputation for financial responsibility in the operation of its business is such a special damage sufficient to sustain a cause of action for malicious prosecution." Id. 377 A.2d at 1223. It decided it was not because "[t]he institution and prosecution of the complaint did not result in any restraint upon the operation of defendant's business or use of its property." Id. "The special damage which is required of defendant herein is an injury arising from the action which would not ordinarily result in all similar causes seeking recovery of damages for breach of [contract]." Id.
 
 
 22
 The Venutos argue, however, that they have been restrained from operating their business as a result of the fraud claim because they were unable to sell franchises after the fraud claim was disclosed. They point to the Maryland Stop Order that issued after Carella's counterclaim for fraud was reported to that state. This argument is problematic for several reasons. It is not clear who reported the counterclaim. It is not clear that the stop order issued solely as a result of the counterclaim. Most important, however, is the fact that the stop order was not issued by the court considering the counterclaim. Therefore, it does not share the common trait that defines a direct interference.
 
 
 23
 Moreover, Fiedler held that interference with one's business or reputation is not a special grievance. Fiedler, 377 A.2d at 1222 (damage to plaintiff's business reputation for financial responsibility insufficient); see also Ackerman v. Lagano, 172 N.J.Super. 468, 412 A.2d 1054 (N.J.Super.Ct. Law Div.1979) (interference with medical practice and professional reputation insufficient). Thus, the Venutos' argument that the stop order Maryland issued against Lightning Lube is a special grievance fails.
 
 
 24
 We recognize that the New Jersey Superior Court Appellate Division noted in Penwag that the "filing of a petition for bankruptcy," among other things, could constitute an interference with personal property. Penwag, 372 A.2d at 1166. In support, the Penwag court cited several out-of-state cases including Balsiger v. American Steel & Supply Co., 254 Or. 204, 451 P.2d 868, 869, reh'g denied, 254 Or. 204, 458 P.2d 932 (1969). In Balsiger the Oregon Supreme Court held that the filing of an involuntary bankruptcy petition necessarily causes the requisite interference with personal property. Id. 451 P.2d at 868-69. "One who initiates civil proceedings against another which allege the other's insanity or insolvency" may be liable for malicious prosecution. Id. at 869-70 (quoting Restatement, 3 Torts 455, Sec. 678 (1960)). Treatises have also recognized that involuntary bankruptcy proceedings may constitute the special injury. See Fowler V. Harper et al., The Law of Torts, Sec. 4.8, at 465-66 (2d ed. 1986) ("Instances of the kinds of injury that usually will qualify as the requisite 'interference' or special damage include proceedings involving the arrest of plaintiff or the attachment or other deprivation of plaintiff's property [and] involuntary bankruptcy proceedings ... among others.") (emphasis added). But in voluntary bankruptcies the party claiming injury has itself initiated the bankruptcy proceedings alleging its own insolvency. The Venutos' argument that there should be no distinction between a voluntary and an involuntary bankruptcy petition fails. The voluntary bankruptcies filed here were the direct result of the Venutos' own act, but only an indirect result of the filing of the counterclaim they allege as Carella's tortious act. There was no arrest or restraint of liberty or deprivation of a property right associated with the commencement of civil litigation on the counterclaim for fraud that Carella filed against the Venutos. Cf. Vickey v. Nessler, 230 N.J.Super. 141, 553 A.2d 34, 38-39 (N.J.Super.Ct.App.Div.1989), cert. denied, 117 N.J. 74, 563 A.2d 836 (N.J.1989). That did not occur until the Venutos themselves filed for voluntary bankruptcy.
 
 
 25
 The Venutos make one other argument in their brief that we must consider. They contend that New Jersey's Frivolous Claims Act, N.J.Stat.Ann. Sec. 2A:15-59.1 (West Supp.1993), evidences that state's adoption of the modern public policy of providing redress to victims of frivolous litigation whenever claims have been filed for an improper abusive purpose that causes injury. The Frivolous Claims Act authorizes a winning party, including a defendant, to recover the costs of litigation and attorneys' fees when it has been made a party to a frivolous claim. They contend the New Jersey Supreme Court would be persuaded to hold, on analogy to this statute, that a voluntary bankruptcy petition which results from a malicious civil action is a special grievance. We disagree. In Evans v. Prudential Property & Casualty Insurance Co., 233 N.J.Super. 652, 559 A.2d 888 (N.J.Super.Law Div.1989), the court concluded the common law action for malicious prosecution has elements that make it materially different from the statutory action for frivolous claims. Id. 559 A.2d at 892-93. Under the statute, the harm for which recovery is allowed is limited to reasonable attorneys' fees and costs expended in defending the frivolous action. In a common law action for malicious prosecution, however, the counsel fees a party has incurred in defending the frivolous action are not a special grievance and recovery is not limited to counsel fees and costs but extends to all damages that are proximately caused by the direct interference attendant upon process issued in the maliciously brought action. The court in Evans concluded that "it must not treat a claim under [the Frivolous Claims Act] as identical to an assertion of malicious prosecution." Id. at 893.
 
 IV.
 
 26
 In conclusion, we predict that the New Jersey Supreme Court will not abandon the requirement that a claim for malicious prosecution of a civil action must include a "special grievance" and that a special grievance must be the direct result of the malicious prosecution itself. Therefore, we also conclude that a voluntary bankruptcy is not a special grievance. New Jersey's case law evidences a strong policy in favor of strict limits on the tort of malicious prosecution. That policy appears to be grounded in a fear of multiplying litigation and a desire not to inhibit the filing of actions that seek redress for civil wrong out of fear of a crippling damage suit if the original action is unsuccessful. See Ackerman, 412 A.2d at 1057 (quoting Mayflower Indus. v. Thor Corp., 83 A.2d 246, 253 (N.J.Super.Ct.Ch.Div.1951), aff'd, 89 A.2d 242 (N.J.1952)). To further these goals, the New Jersey courts have yet to hold a special grievance exists unless the interference with property is a direct result of process issued in the malicious action itself. An involuntary bankruptcy fits this restrictive category. A voluntary one does not.
 
 
 27
 If the filing of a voluntary bankruptcy were a special grievance, individuals who had financial problems as a result of any litigation would be encouraged to bring civil actions for malicious prosecution, asserting that financial difficulties leading to their own petitions for bankruptcy were caused by an alleged malicious action. A person who initiates an action for malicious prosecution of a civil case would then merely have to allege and prove there was either an intent to cause it financial difficulty or that the resulting financial difficulties were a foreseeable result of the allegedly malicious action. This would telescope the element of a special grievance into the element of malice. It would also be inconsistent with the unbroken New Jersey case law disfavoring the tort of malicious prosecution, see Ackerman, 412 A.2d at 1057, and restricting it to cases in which the deprivation or interference with the property of the person asserting a claim for malicious prosecution of a civil action is a direct result of the underlying malicious action.
 
 
 28
 We recognize, of course, that the facts the Venutos alleged were sufficient to permit an inference that the counterclaim for civil fraud which Carella filed on Witco's behalf was indeed meant to "bury" the Venutos underneath a torrent of litigation fees and, at the same time, preclude them from selling additional franchises. Indeed, we believe it could also be inferred from the Venuto's allegations that bankruptcy was the foreseen or intended result of the counterclaim. These facts, however, go to the malice element of the tort for malicious prosecution, not to New Jersey's additional requirement of a "special grievance." For all these reasons, we therefore predict that the New Jersey Supreme Court will hold that a voluntary bankruptcy caused by a frivolous claim filed to create the financial difficulties that ultimately lead a debtor to seek relief in a bankruptcy court is not the direct interference with property that is necessary to satisfy the element of special grievance.
 
 
 29
 The order of the district court granting Carella's Rule 12(b)(6) motion to dismiss will be affirmed.
 
 NYGAARD, Circuit Judge, concurring:
 
 30
 I agree with the majority's disposition of this case affirming the district court's order dismissing plaintiffs' complaint. I believe, however, that the issue adjudicated by the majority is not properly before us; hence, I concur in the result only.
 
 
 31
 Venuto's attorney never pleaded the element of special grievance in his complaint, nor did he at any time seek leave to amend.[1] In response to Carella's motion to dismiss under Fed.R.Civ.P. 12(b)(6), Venuto's attorney filed only a three paragraph memorandum of law, which reads:
 
 
 32
 Mr. Venuto and Mrs. Venuto were driven into bankruptcy as a result of the sham counterclaim. Hence, the requirement of a special grievance has been satisfied. Penwag Property Co. Inc. v. Landau, 148 NJ Super 493, 501 [372 A.2d 1162] (App Div.1977) aff'd 76 NJ 595 [388 A.2d 1265] (1978) [sic].
 
 
 33
 Under Rule 8 of the FRCP, all that is required is a short and plain statement alleging the claim for which relief is sought. Plaintiffs have done that. Defendants can investigate the connection between the filing of the bankruptcy petition and the sham counterclaim through discovery.
 
 
 34
 For the foregoing reasons, the motion must be denied.
 
 
 35
 As the majority points out, this memorandum of law neither discusses the fact that the bankruptcy was voluntary, explains its legal significance, nor mentions anything about the stop order on which plaintiffs now rely.
 
 
 36
 After defendants filed their reply brief, Venuto's attorney filed a sur-reply memorandum. This document, five pages in length, recited the same arguments he asserts on appeal. The district court, as the majority agrees, quite properly recognized this tactic by Venuto's attorney as "sandbagging" his adversaries and refused to consider the sur-reply memorandum.
 
 
 37
 Because the district court acted within its discretion in refusing to consider the sur-reply memorandum, it is evident that the arguments presented therein were not properly before the district court. And it is equally evident, indeed beyond dispute, that issues not raised in the district court are waived on appeal. E.g., Frank v. Colt Industries, Inc., 910 F.2d 90, 100 (3d Cir.1990). This rule fully applies here, even though Venuto referred in a single sentence of his initial memorandum to the argument that defendants' conduct resulted in the Venutos' bankruptcy. See id. (fleeting reference to issue in district court insufficient to preserve it for appellate review). The reason for this principle is sound and necessary. The Court of Appeals exists to correct errors made by the district courts, and it makes no sense for an appellant to assert that the district court erred when it had no opportunity to even address a particular issue.[2]
 
 
 38
 This is no less true where, as here, the district court examines the improper memorandum or brief and concludes that nothing in it would have changed its analysis. The consideration that Venuto's sur-reply memorandum deserved in the district court can be summed up simply: none. Nevertheless, by judicial grace, the district court examined it. To say now that a courtesy consideration of the sur-reply memorandum by the district court makes all the merits issues improperly raised therein appealable subverts the processes in both the trial and appellate courts.
 
 
 39
 Because the issue of special grievance is not properly before us, I concur with the majority only in the result.
 
 
 
 [1]
 There is before us an outstanding motion by Carella to strike certain portions of the Venutos' appendix, namely the sur reply memorandum and supporting attachments submitted to the district court, because the district court refused to consider this material and it therefore presents material outside the district court record. Because the district court did not abuse its discretion in refusing to consider this untimely material, Carella's motion to strike portions of the Venutos' appendix will be granted. Moreover, as the district court determined, consideration of this material would not alter our analysis
 
 
 [2]
 Thus, the district court's refusal to consider Venuto's sur-reply memorandum did not prevent it from considering the merits of the special grievance issue at some length in its opinion disposing of this case. We disagree with the concurrence's view that this is a mere courtesy to counsel which cannot justify our own consideration of the issue
 
 
 [3]
 No one disputes that the Venutos' complaint adequately alleged all of the elements of their claim other than "special grievance."
 
 
 [4]
 New Jersey's common law, unlike Pennsylvania's, did not apply the strict English rule that an action for abuse of civil process required an arrest or seizure of the person or property. See Ace v. Argonaut Ins. Co., 307 Pa.Super. 200, 452 A.2d 1384, 1385 (1982) (citing Publix Drug Co. v. Breyer Ice Cream Co., 347 Pa. 346, 32 A.2d 413 (1943); Garland v. Wilson, 289 Pa. 272, 137 A. 266 (1927)). The strict English rule had the practical effect of abolishing the action for abuse of civil process in Pennsylvania once imprisonment for debt and the resulting common law warrant for execution on the body of a judgment debtor became unavailable. It took legislative action to give practical effect in Pennsylvania to an action for abuse of civil process, that state's common law analogue to New Jersey's action for malicious prosecution of a civil case. See 42 Pa.Cons.Stat.Ann. Secs. 8351-54 (West 1982 & Supp.1993)
 
 
 [1]
 Venuto's attorney disingenuously argues before us that the district court "erred when it dismissed plaintiffs-appellants' complaint without granting plaintiffs-appellants the right to amend the complaint to set forth facts which would sustain a finding of 'special grievance' under New Jersey law." But the record is clear, he never moved to amend
 
 
 [2]
 I am not as convinced as the majority that, were the issue properly preserved for our review, voluntary bankruptcy cannot constitute a special grievance. There is a powerful argument to be made that, once litigation has been initiated for a wrongful purpose, it matters little who seeks the protection of the Bankruptcy law. In any event, this is a novel question under New Jersey law, a question which a federal court, as a mere predictor of that law rather than an expositor, should not go out of its way to reach when it has been procedurally waived