**SBK CATALOGUE PARTNERSHIP, Plaintiff,**

v.

**ORION PICTURES CORPORATION, et al., Defendants.**

**SBK CATALOGUE PARTNERSHIP, Plaintiff–Crossclaimant,**

v.

**Wandra MERRELL, Ray Allen, George Brown and Wandra Merrell d/b/a Music Productions Co., Plaintiffs–Crossclaimants.**

Civ. No. 85–4983 (CSF).

United States District Court,
D. New Jersey.

Sept. 13, 1989.

---

1054

**1056**

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A. by Jeffrey Barton Cahn, Newark, N.J., for plaintiff-cross-claimant SBK Catalogue Partnership.

David Hoffman, Creskill, N.J., for plaintiffs-crossclaimants Merrell, Allen, Brown and Wanessa Music Productions Co.

CLARKSON S. FISHER, District Judge.

This action stems from an alleged copyright infringement of the composition "Pepino, The Italian Mouse" ("Pepino") and the corollary dispute over ownership rights to the musical piece which ensued. The litigation, long marked by bitterness and acrimony among the parties, is once again before the court. Presently, plaintiff-crossclaimant SBK Catalogue Partnership (the "Partnership") moves the court for an order granting it summary judgment on each of the following crossclaims against plaintiffs-crossclaimants Wandra Merrell ("Merrell"), Ray Allen ("Allen"), George Brown ("Brown") and Wanessa Music Production Co. ("Wanessa"): (1) copyright infringement; (2) tortious interference with statutory exclusive copyright and publishing rights and with prospective economic advantage of a copyright proprietor; (3) slander of copyright title; (4) abuse of process; (5) tortious interference with

contract rights and, against Merrell and Allen only, (6) breach of contract.

In addition, the Partnership seeks enhanced statutory damages on its copyright infringement claim, pursuant to 17 U.S.C. § 504(c)(2), and an award of costs, including attorney's fees pursuant to 17 U.S.C. § 505. Alternatively, the Partnership seeks an award of attorney's fees, under either Fed.R.Civ.P. 11 or 28 U.S.C. § 1927, for the alleged bad-faith litigation of Merrell, Allen, Brown and Wanessa. With regard to the remaining claims, the Partnership requests that the issue of damages be submitted to the jury.[1] Merrell, Allen, Brown and Wanessa (for purposes of brevity, these parties shall hereinafter be referred to as the "composers") oppose the Partnership's motion for summary judgment and cross-move for summary judgment on their breach of fiduciary duty crossclaim against the Partnership. In addition, the composers seek an order striking the pleadings of the Partnership, as well as attorney's fees and costs, pursuant to Fed.R.Civ.P. 37, for the Partnership's alleged failure to comply with a discovery order issued by the Honorable Freda L. Wolfson, United States Magistrate, on May 1, 1989, regarding the date on which the deposition of James F. Lightstone would be taken. Finally, the Partnership has cross-moved for an order dismissing the composers' breach of fiduciary duty claim pursuant to Fed.R.Civ.P. 12(b)(6)[2] or, in the alternative, granting it summary judgment pursuant to Fed.R.Civ.P. 56.

*Procedural History*

For purposes of clarity, it is necessary to recount some of the tortured history of this litigation. I shall attempt to be brief. In 1962, Merrell and Allen composed the original melody and lyrics to "Pepino." That same year, they assigned all rights to Romance Music, Inc. ("Romance").[3] The agreement between Merrell and Allen and Romance was a complete assignment of all present and future rights of the composers in exchange for royalties and was made assignable without restriction. Romance immediately assigned fifty percent (50%) of its copyright interest to Ding Dong Music Corporation ("Ding Dong").[4] Romance and Ding Dong then applied for joint registration of the "Pepino" copyright.

In 1967, Romance assigned all of its rights in "Pepino" to Unart Music Corporation ("Unart") and recorded the assignment with the Copyright Office. Unart retained its rights pursuant to the agreement until 1983, when it assigned its 50% ownership rights to CBS, Inc. Again, this assignment was publicly recorded with the Copyright Office. Later that year, CBS, Inc. transferred all of its rights to "Pepino," by a publicly-recorded assignment, to the Partnership (then CBS Catalogue Partnership). Thus, in 1983, the Partnership acquired a 50% ownership interest in the copyright to "Pepino," which it retains to date.

In 1984, Orion Pictures released a Woody Allen film entitled "Broadway Danny Rose." Believing that part of the soundtrack (*i.e.*, the song Agita) to "Broadway Danny Rose" infringed on the copyright to "Pepino," the original composers, Merrell and Allen, and their manager, George Brown, immediately began writing to CBS, Inc. to notify it of the alleged infringement, demanding that it initiate a lawsuit.[5]

1. The court finds it unnecessary to address the Partnership's request for a directed liability verdict pursuant to Fed.R.Civ.P. 50, in the event that the court denies its motion for summary judgment, since the standard for awarding relief under the two rules is essentially the same.

2. Because resolution of the Partnership's cross-motion requires the court to refer to materials outside of the pleadings (*i.e.*, the Lightstone Affidavit), the court shall consider the merits of the cross-motion pursuant to Fed.R.Civ.P. 56 only.

3. At the time of the assignment, plaintiff-cross-claimant Brown was a principal of Romance, the original publisher-copyright owner of "Pepino."

4. When the action was commenced, Ding Dong was still the co-owner of the copyright to "Pepino" and was named as a party to this suit; however, because the music company failed to participate in the litigation, a default judgment was entered against it on February 1, 1988.

5. In an opinion issued on August 13, 1987, this court found that at the time of the alleged infringement, it was a matter of public record that CBS, Inc. no longer held the rights to the copyright. The court noted that in an action

When CBS, Inc. failed to take any action, the composers sent correspondence dated January 3, 1985, stating that they were cancelling the conveyance of ownership rights to "Pepino" which had been assigned to CBS, Inc. by Unart in 1967. On January 24, 1985, the composers entered into a new publishing agreement with Wanessa [6] entitled "Songwriters Contract" which warranted that "Pepino" was an original work of Merrell and Allen and that the composers had complete power to enter into the agreement. The agreement also warranted that no adverse claims existed with regard to the musical composition.

In October 1985, Merrell, Allen and Brown instituted a lawsuit, based on copyright infringement, against Orion Pictures Corporation, Woody Allen, Jack Rollins, Charles H. Joffe, Jack Rollins & Charles H. Joffe Productions, Inc., Nick Apollo Forte, Vestron, Inc., Eric Pleskow, Versatility Music and Fan Records (the "Orion Defendants"). At the same time, the composers commenced a separate action in this court against CBS Songs, a division of CBS, Inc., alleging that they were damaged by the publisher/copyright owner's delay in commencing copyright infringement proceedings against the Orion defendants. Jurisdiction over this suit was based on 28 U.S.C. § 1332, diversity jurisdiction; however, because diversity was not complete as between all plaintiffs and all defendants, the action was dismissed by consent order on February 6, 1986.

In anticipation of the dismissal of the second federal action, the composers filed an identical suit in the Superior Court of New Jersey, Law Division, Bergen County, on January 21, 1986. The state action was dismissed on motion by defendant CBS Songs, a division of CBS, Inc., on June 25, 1986. As noted earlier, the state court found that CBS Songs was not a legal or beneficial owner of the "Pepino" copyright

at the time of the alleged infringement. Since it lacked standing to sue, in the first instance, it could not be held liable to the composers for any damages which resulted from the alleged "delay."

On March 12, 1986, Brown, purporting to be President of Wanessa, sent a letter to Broadcast Music, Inc. ("BMI"), a major United States performing rights society, demanding that BMI amend its records to reflect that Wanessa is to receive whatever royalties BMI would have sent to the current record publisher for use of "Pepino." BMI complied. On March 25, 1986, Brown sent a letter to "All Sub–Publishers World–Wide," informing them that Wanessa had acquired the 50% interest in "Pepino" held by the Partnership and was currently the administrator of the copyright. Also, in March 1986, a second copyright infringement suit was instituted in this court against the Orion defendants, this time by Wanessa. On April 8, 1986, Allen, Merrell and Brown filed for copyright registration, claiming a copyright in the words and music (originally copyrighted) and new additional words to a work entitled "Pepino, The Italian Mouse." Finally, on May 27, 1986, Brown sent correspondence to the Canadian Music Reproduction Rights Agency, Ltd., a Canadian performing rights society, asserting the identical claim to royalties which had been made to BMI.

In May 1986, the Partnership, as a 50% copyright owner and the exclusive publisher of "Pepino," filed a motion to intervene in the first federal copyright infringement action instituted by the composers in this court against the Orion defendants (the October 1985 action). The composers opposed the motion to intervene. On July 3, 1986, before the motion was resolved, the Partnership commenced its own infringement action against the Orion defendants, and in the same suit asserted several pendent state law claims against the compos-

brought on the same facts in the Superior Court of New Jersey, Law Division, Bergen County, the Honorable James T. Murphy, J.S.C., had held that Merrell, Allen and Brown "were on constructive notice as of October 14, 1983, that the copyright of this song had been assigned to

another entity, namely, CBS Catalogue Partnership."

**6.** Wanessa was formed on March 3, 1983, with Wandra Merrell as its sole owner. Since its formation, it has been operated as a sole proprietorship.

ers based on their attempt to cancel the copyright-publishing rights owned by the Partnership through the letters sent to CBS, Inc. Upon learning of the Wanessa action, the Partnership filed a motion to consolidate its July 1986 infringement suit, the March 1986 infringement suit and the October 1985 infringement suit commenced by the composers. Again, the composers opposed the motion.

In August 1986, the composers filed an answer, counterclaim and third-party complaint against CBS Songs, a division of CBS, Inc. in the July 1986 infringement action brought by the Partnership (notwithstanding the dismissal of its claim against this entity in the earlier state court action). Shortly after the composers filed these federal pleadings, they filed a second state court action alleging the identical "delay" claim and naming CBS, Inc. and CBS Catalogue Partnership as defendants. Both defendants moved for dismissal based on the existence of a pending federal action in which this claim had been asserted. Although the motion was denied, the case was placed on "inactive status."

In September 1986, this court granted the Partnership's motion to consolidate, thus rendering moot the Partnership's earlier motion to intervene in the composers' October 1985 infringement action. CBS Songs, a division of CBS, Inc. moved for dismissal of the third-party complaint, asserting the res judicata effect of the June 25, 1986, New Jersey Superior Court judgment. Prior to a hearing, CBS Songs requested that the composers voluntarily withdraw the third-party complaint; however, the composers refused this request. The motion was eventually decided in favor of CBS Songs, and Rule 11 sanctions were awarded against counsel for the composers to compensate CBS Songs for having to bring the motion.

In August 1987, the Partnership moved for summary judgment on the crossclaims asserted against it by the composers. These included (1) failure to bring an in-

fringement action against the Orion defendants, (2) breach of contract and (3) a mixed contract-tort claim. This court held that, as a result of an unbroken chain of assignments starting with the Merrell and Allen assignment to Romance and ending with CBS Songs' assignment to the Partnership, the Partnership had held a 50% copyright ownership in "Pepino" in 1984, when the alleged infringement occurred. Finding no merit to the composers' crossclaims, the court granted summary judgment to the Partnership. The Partnership then sought and obtained dismissal of the state court action against it based on the res judicata effect of this court's August 13, 1987, decision. Although CBS, Inc. also sought dismissal of the composers' claim against it, the state court did not grant dismissal of the claims against CBS, Inc. at this time.

In November 1987, after months of settlement negotiations, a settlement agreement was executed by the Partnership and the Orion defendants. The agreement contemplated a retroactive written license for the use of the musical composition "Pepino"; however, execution of the terms of the settlement is contingent upon a favorable resolution of this case. Thus, no written license has been prepared, and no fees have been paid to date. The Orion defendants then moved for summary judgment on the infringement claims brought against them by the composers. On February 1, 1988, finding that the Partnership was entirely within its rights to grant a retroactive license to the Orion defendants and that an authorization from one joint copyright owner is an effective defense to an infringement action brought by another joint owner, the court granted the Orion defendants' motion, dismissing the composers' claims against them.[7]

The Partnership then requested and was granted leave to file an amended claim against the composers. The Partnership added the following crossclaims against the composers: (1) copyright infringement, (2)

---

7. Two subsequent actions were filed by the composers—first, to amend the court's order to allow the composers to pursue an immediate ap-

peal pursuant to 28 U.S.C. § 1292(b), and second, to vacate the judgment altogether, pursuant to Fed.R.Civ.P. 60(b). Both were denied.

tortious interference with copyright and publishing rights and with prospective economic advantage, (3) slander of title, (4) abuse of process and a violation of Rule 11 and 28 U.S.C. § 1927, and (5) breach of contract and tortious interference with contract. The composers also filed an additional claim founded on breach of fiduciary duty against the Partnership. These cross-claims are the subject of the parties' cross-motions for summary judgment presently pending before this court.

*Summary Judgment Standard*

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton*, 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

*Copyright Infringement*

The Partnership asserts that the following acts committed by the composers constituted infringement of the "Pepino" copyright:

1. The January 3, 1985, letter from George Brown to CBS Songs attempting a unilateral cancellation of the ownership rights to the "Pepino" copyright;

2. The January 24, 1985, publishing agreement between Merrell and Allen and Wanessa Music Productions Co. in which Wanessa was given authorization to publish the musical composition;

3. The April 8, 1986, filing with the Copyright Office of a claim to an unauthorized derivative work based on the original composition which consisted of the words and music to "Pepino" as well as new additional words, all in derogation of the existing copyright owned by the Partnership; and

4. The March 12, 1986, March 25, 1986, and May 27, 1986, letters sent by George Brown on behalf of Merrell, Allen and Wanessa to BMI, "all sub-publishers world-wide" and the Canadian Music Reproduction Rights Agency, Ltd., respectively, notifying these entities that Wanessa was the current copyright owner of "Pepino"; authorizing the licensing of public performances of the musical composition by the performing rights societies; and directing that all royalties from such performances be paid to Wanessa.

The composers do not dispute the facts which underlie the Partnership's copyright infringement claim. Instead, they argue that the above acts do not constitute copyright infringement and that, in any event, Merrell and Allen cannot be liable for infringement because they are beneficial owners and, together with Wanessa, are subpublishers of the musical composition in the Territory of the British Isles and the Republic of South Africa, thus entitling them to revise the lyrics and file an additional copyright to "Pepino." Further-

more, the composers argue that the Partnership has not demonstrated that any profits resulted from the April 8, 1986, copyright filing or that there was any public display of the new copyrighted work. Last, the composers assert that, in any event, the Partnership has suffered no damages.[8]

*Liability*

The Copyright Act of 1976 provides, in relevant part, that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright." 17 U.S.C. § 501(a). Section 106 of Title 17 of the United States Code states:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

Before it can determine whether the above-mentioned acts of the composers constituted copyright infringement, the court must first resolve the threshold issue of whether the composers, as "beneficial owners," can be held liable for copyright infringement. The composers assert that, as "beneficial owners" of the "Pepino" copyright and as subpublishers in the British Isles and the Republic of South Africa, they possess the right to revise the lyrics and file a copyright to the new work. They further assert that they are immune from liability for copyright infringement as a "co-owner" of the copyrighted work, citing only a 1960 decision of the United States District Court for the Southern District of California, *Sweet Music, Inc. v. Melrose Music Corp.*, 189 F.Supp. 655 (S.D.Cal. 1960), as support for this proposition.[9]

For the reasons stated below, the court finds the composers' arguments to be completely without merit and concludes that their status as "beneficial owners" does not preclude the court from finding them liable for copyright infringement. The court further concludes that neither Wanessa nor the composers, Merrell and Allen, have demonstrated that they have the legal right to compose new lyrics to "Pepino" without the express consent of the Partnership by virtue of an assignment of sub-publishing rights in the British Isles and the Republic of South Africa by Baton Music Co. Ltd. to them.[10]

A "copyright owner" is defined, under the Copyright Act, as the owner of any of the exclusive rights comprised in a copyright. *See* 17 U.S.C. § 101. The exclusive rights under a copyright include the right to do and to authorize others to do the following: reproduction, preparation of derivative works, public performances or presentation, and distribution or sale of the

---

8. Following this court's finding, in its August 13, 1987, opinion that the Partnership owned 50% of the copyright to "Pepino" and had exclusive publishing rights to the musical composition, the composers disgorged the royalties which had been misappropriated.

9. The court notes that, in ordering the parties to rebrief the issue of copyright infringement, it directed that the arguments raised should be supported by pertinent legal authority. Despite the composers' having been given a second opportunity to support their factual arguments with legal precedent, their papers are completely deficient in this regard.

10. Although the court concludes that these arguments have no merit, it should be noted at this juncture that only Merrell and Allen can claim status as "beneficial owners," and that only Merrell, Allen and Wanessa can assert any rights under the assignment of the subpublishing agreement, since Brown was not a party to that agreement.

copyrighted work. *See* 17 U.S.C. § 106. In addition, the copyright owner can transfer these exclusive rights as a whole or separately. *See* 17 U.S.C. § 201(d). It is undisputed that by virtue of the 1962 assignment of the "Pepino" copyright to Romance, the composers transferred all of their legal rights to "Pepino," retaining only the right to receive a percentage of the monies generated by the sale of the musical composition.

It is well settled that the legal owner of a copyright cannot infringe upon a copyright interest owned by him and that joint copyright owners cannot maintain actions against each other for infringement of the rights jointly held. *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir.1984); *Fantasy, Inc. v. Fogerty*, 654 F.Supp. 1129, 1130 (N.D.Cal.1987). The composers argue that, as an extension of the rule that joint owners of a copyright are incapable of copyright infringement, beneficial owners similarly cannot be found liable for copyright infringement. This argument reveals a basic misunderstanding on the part of the composers with regard to the legal distinction between joint owners and beneficial owners of a copyright.

The rationale behind the prohibition against infringement suits between legal co-owners of a copyrighted work is that the exclusive rights enumerated in 17 U.S.C. § 106 are held jointly by the co-owners; thus, each co-owner has " 'an independent right to use or license the use of the copyright.' " *Fantasy, Inc. v. Fogerty*, 654 F.Supp. at 1131 (quoting *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir.1984)). Infringement is the violation of an owner's interest in the copyright by a nonowner. 17 U.S.C. § 501(a); *Cortner v. Israel*, 732 F.2d at 271. Since the purpose of an infringement action is to protect the owner's property interest in the copyright against unauthorized use by a nonowner, it follows that an infringement action cannot be maintained against a joint owner who exercises his legal right to use or license others to use the copyright. *Cortner*, 732 F.2d at 271–72; *Fantasy, Inc. v. Fogerty*, 654 F.Supp. at 1131.

On the other hand, the definition given to a "beneficial owner" includes " 'an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.' " *Fantasy, Inc. v. Fogerty*, 654 F.Supp. at 1131 (quoting *Cortner*, 732 F.2d at 271). Thus, "beneficial owners" are individuals who have given up the exclusive § 106 rights in exchange for a percentage fee or royalties derived from use or sale of the copyright and, consequently, do not have an independent right to use or license others to use the copyright. *Id.* A "beneficial owner" retains an economic interest in the copyright, which only extends to the proceeds derived from its exploitation. *Fantasy, Inc. v. Fogerty*, 654 F.Supp. at 1131. Because a "beneficial owner" does not have an independent right to use or authorize others to use the copyright, he or she is capable of infringing on the legal owner's exclusive rights. *Fantasy, Inc. v. Fogerty*, 654 F.Supp. at 1131; *see also Dodd, Mead & Co., Inc. v. Lilienthal*, 514 F.Supp. 105, 108 (S.D.N.Y.1981). Thus, the fact that the composers are beneficial owners who have standing to bring a suit against alleged infringers does not immunize them from liability for any infringement they may commit.

The composers and Wanessa also assert that they cannot be found liable for copyright infringement based on their creating a new version of "Pepino," concededly derived and substantially similar to the original song, and filing a copyright registration for the new version because, as "sub-publishers in the Territory of the British Isles and the Republic of South Africa," they were granted the right to revise the lyrics and file an additional copyright. This contention likewise has no merit.

First, the composers and Wanessa have not substantiated this argument with any facts. The only document submitted in support of this contention is a copy of an assignment from Baton Music Co. Ltd. (now defunct) to them of its rights, title and interests to the "Pepino" copyright; however, the composers and Wanessa have failed to submit the original subpublishing

agreement from which the court could determine exactly what those rights or interests so assigned were. Brown, in his certification, states that it is his "belief" that the original subpublishing agreement with Baton is in the Partnership's possession. Nonetheless, counsel for Wanessa and the composers has not filed a Rule 56(f) affidavit attesting that the need for further discovery precludes the granting of summary judgment at this time, and, in any event, counsel for the Partnership stated at oral argument that the Partnership does not possess a copy of this agreement.

Second, even if accepted as proper evidence, the "standard subpublishing agreement" submitted by the composers as proof of the terms of the actual agreement merely permits the arrangement, adaptation, translation and creation of new lyrics by the subpublisher and clearly states that the new or changed work shall be the sole and exclusive property of the American publisher. It does not grant the subpublisher the right to file a copyright registration to the derived work in his or her own name as rightful owner. Hence, if the composers and Wanessa have infringed on any of the Partnership's exclusive rights to the "Pepino" copyright, their status as subpublishers in the British Isles and South Africa does not immunize them from liability for copyright infringement.

As noted earlier, by virtue of the 1962 publishing agreement, the composers, Merrell and Allen, assigned all of their rights in "Pepino" to Romance, retaining only the right to receive royalties under terms set forth in that agreement. In its August 13, 1987, opinion, this court found that, through an unbroken chain of assignments, the Partnership ultimately obtained (and presently owns) a 50% ownership right, as well as the exclusive publishing rights, to "Pepino." Thus, at the time the composers committed the acts complained of as copyright infringement, the Partnership was the holder of 50% of the legal rights to the copyrighted musical composition "Pepino."

■ The Copyright Act of 1976 grants the owner of a copyright the exclusive right to use and to authorize others to use the copyrighted material in one of five different ways. *See Sony Corp. of Amer. v. Universal City Studios, Inc.*, 464 U.S. 417, 432–33, 104 S.Ct. 774, 783–84, 78 L.Ed.2d 574 (1984). These rights include the right to do or authorize others to do any of the following: (1) reproduce the copyrighted work; (2) prepare derivative works based upon the copyrighted work; (3) distribute copies of the copyrighted work by sale or other transfer of ownership or by rental, lease or lending; (4) perform the copyrighted work publicly, and (5) display the copyrighted work publicly. 17 U.S.C. § 106. Under § 501(a), any unauthorized use of copyrighted material which is inconsistent with the exclusive rights enumerated in § 106 (*i.e.*, by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute) constitutes copyright infringement. *Teleprompter Corp. v. Columbia Broadcasting Sys., Inc.*, 415 U.S. 394, 398 n. 2, 94 S.Ct. 1129, 1133 n. 2, 39 L.Ed.2d 415 (1974). Moreover, it is now clear that "an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner." *Sony Corp. of Amer. v. Universal City Studios, Inc.*, 464 U.S. at 435 n. 17, 104 S.Ct. at 785 n. 17; *see also Peter Starr Prod. Co. v. Twin Continental Films*, 783 F.2d 1440, 1443 (9th Cir.1986).

The Partnership argues that the composers' conduct in purporting to cancel the publishing agreement assigned to it, authorizing Wanessa to publish the musical composition, Wanessa's subsequent correspondence to BMI, the Canadian Music Reproduction Rights Agency and "all sub-publishers worldwide" authorizing the licensing of performances of "Pepino" and directing that royalties from such performances be paid to Wanessa, as the copyright owner of "Pepino," and the filing of a claim with the Copyright Office to an unauthorized derivative work based on "Pepino" constitute infringement of the Partnership's exclusive rights under § 106 to authorize the distribution of "Pepino" and to prepare derivative works based on "Pepi-

no." Because the court concludes that an issue of fact exists as to which, if any, of the acts committed by the composers resulted in an actual unauthorized distribution or sale of the musical composition, and because the court is reluctant to decide the copyright infringement claims in a piecemeal fashion, the Partnership's motion for summary judgment on its copyright infringement claim and its request for attorney's fees will be denied at present.

■ The court notes at the outset, however, that it is clear that the January 3, 1985, letter from George Brown to CBS Songs was nothing more than an unsuccessful attempt to cancel the ownership rights to "Pepino" which were held by the Partnership. As this court found in its August 13, 1987, opinion, the composers had no legal basis upon which to rescind the 1962 publishing agreement, since even a delay in instituting an infringement suit against the Orion defendants was not a material breach of the publishing agreement, and, in any event, the correspondence was not even directed to the correct party. The mere sending of this ineffective letter of recision to CBS Songs, however, did not infringe on any of the Partnership's exclusive rights under 17 U.S.C. § 106 and, thus, did not constitute copyright infringement.

The composers next entered into a publishing agreement with the newly created Wanessa, in which they purported to give Wanessa authorization to publish the musical composition. Armed with this authorization, Brown, as President of Wanessa, sent off three letters, one to BMI, one to the Canadian Music Reproduction Rights Agency Ltd. and one to "all sub-publishers worldwide," notifying them that Wanessa was the current copyright owner of "Pepino," authorizing the licensing of public performances of the music and directing that royalties from those public performances be sent to Wanessa. While it is undisputed that the payment of royalties directly to Wanessa did follow the sending of this correspondence, it is unclear which of the performing rights societies paid royalties to Wanessa, whether any of these royalties were obtained for performances not authorized previously by the Partnership, and which, if any, of the subpublishers received the March 25, 1986, letter sent to "all subpublishers worldwide," or whether any royalties at all were paid to Wanessa by a subpublisher for performances authorized without the Partnership's permission.

■ It is also unclear to the court whether the Partnership contends that the mere act of authorizing these entities to distribute or vend the copyrighted music infringes the Partnership's exclusive right under § 106(3) of the 1976 Copyright Act "to authorize" others to distribute copies of the copyrighted work by sale or other transfer of ownership without proof that actual distribution by the third parties took place or whether the Partnership contends that the undisputed payment of royalties to the composers is sufficient proof of distribution, thus making the composers liable under § 106(3) for copyright infringement. Since the court is of the opinion that the mere act of "authorizing," without proof that the party so authorized actually distributed copies of the copyrighted work, does not constitute copyright infringement under the Act; and because the Partnership has not demonstrated which of the three letters resulted in an actual unauthorized distribution of "Pepino," but seeks statutory damages for each act, the court is precluded from awarding summary judgment at this stage of the litigation.

Under the Copyright Act of 1976, the language of § 106 was amended to include the right "to authorize" use of the copyrighted work among the "bundle of exclusive rights" granted to a copyright holder under the Act. The inclusion of the words "to authorize" was intended to clear up the confusion surrounding a party's liability under the doctrine of contributory infringement. *Peter Starr Prod. Co. v. Twin Continental Films*, 783 F.2d at 1443; *see also* H.Rep. 1476, 94th Cong. 2d Sess. 61, *reprinted in* 1976 U.S.Code Cong. & Admin. News 5659, 5674 ("Use of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers"). The doctrine of "contributory

infringement" has been applied in those cases in which there was an ongoing relationship between the direct infringer and the "contributory" infringer at the time the infringement took place. *Sony Corp. of Amer. v. Universal City Studios, Inc.,* 464 U.S. at 437, 104 S.Ct. at 786. Thus, where direct infringement was induced by a party who was in a position to control the use of copyrighted works by others, and who had authorized the use of those works without permission from the copyright owner, that party was found liable as a "contributory" infringer. *Id.* Prior to the enactment of the amended version of § 106, the courts were split on how much involvement in the infringing conduct was necessary to subject a defendant to liability for contributory infringement; however, under the new law, mere authorization of the use is sufficient. *Peter Starr,* 783 F.2d at 1443.

It does not follow from this that contributory infringement will be found for authorizing the use of copyrighted work in the absence of proof of direct infringement. In the instant case, while it is evident that some public performances took place for which the composers received royalties, no evidence has been proffered to show that these public performances or distributions of "Pepino" had not already been authorized by the Partnership by preexisting license agreements and, if not, which of the authorizations by the composers resulted in the direct infringement of "Pepino." Until the Partnership demonstrates that direct infringement occurred as a result of the composers' authorizations, the court is without the means to determine whether the acts complained of are actionable under the Copyright Act or whether they constitute tortious interference with already existing contractual relationships. Therefore, the court is compelled to deny the Partnership's motion for summary judgment on its copyright infringement claim.[11]

11. The court will not address the issue of whether the filing of a copyright claim to a derivative work based on "Pepino," without more, constitutes copyright infringement, as it endeavors to avoid piecemeal resolution of the copyright claims; hence, resolution of this issue will await

## State Law Claims

■ Defendants also move for summary judgment on each of the following state law claims brought against the composers: (1) tortious interference with statutory exclusive copyright and publishing rights and with prospective economic advantage of a copyright proprietor; (2) slander of copyright title; (3) abuse of process; (4) tortious interference with contract rights, and (5) breach of contract.[12] Before reaching the merits of these state law claims, however, the court must first resolve the threshold issue of whether any of the claims have been preempted by the Copyright Act of 1976.

Section 301 of the 1976 Copyright Act provides, in part:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights, remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

\*　\*　\*　\*　\*　\*

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the

a more fully developed factual record along with the other copyright infringement claims.

12. The breach of contract claim is asserted against only Merrell and Allen.

general scope of copyright as specified by section 106.

17 U.S.C. § 301 (1977). Hence, under § 301(a), Congress expressly provided that the federal Copyright Act preempts all state and common law rights pertaining to all causes of action which arise after the effective date of the 1976 Act (*i.e.*, January 1, 1978). *Meltzer v. Zoller*, 520 F.Supp. 847, 853 (D.N.J.1981). Since the acts complained of did not occur until well after January 1, 1978, the new Act governs, and the possible preemption of the Partnership's state law claims by § 301(a) must be addressed as an initial matter. *See Meltzer*, 520 F.Supp. at 854 and n. 17.

Pursuant to § 301, a state law claim is preempted by the federal copyright laws if the following two conditions are satisfied: (1) the subject matter of the work which gives rise to the state law claim falls within the subject matter of the copyright laws as set forth in sections 102 and 103 of Title 17; and (2) the state law creates rights which are "equivalent to" any of the exclusive rights granted to a copyright holder under § 106. *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir.1987); *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986); *Harper & Row Publishers, Inc. v. Nation Enter.*, 723 F.2d 195, 199–200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

Without question, the musical composition "Pepino" falls within the subject matter of copyright, which is defined as "original works of authorship fixed in any tangible medium of expression," including musical works under 17 U.S.C. § 102(a)(2), and the Partnership is the legal owner of the copyright to "Pepino." For preemption to occur, however, the second requirement—that the state law create "legal or equitable rights that are equivalent to any exclusive rights within the general scope of copyright as specified in section 106 of the Act" must be met as well.

The inquiry performed under the second prong of a § 301 preemption analysis has been explained as follows:

[A] right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display.... If, under state law, the act of reproduction, performance, distribution or display ... will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

1 Nimmer, The Law of Copyright § 1.01[B][1] at 1-12-13 (1984) (footnotes omitted). Similarly, in *Harper & Row*, the Court of Appeals for the Second Circuit stated that "[w]hen a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights, the state law in question must be deemed preempted." 723 F.2d at 200 (citing *Oboler and Nostalgia Lane, Inc. v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983)).

Viewed under this test it is clear that the Partnership's state law claims, with the exception of its abuse of process claim, are all in danger of preemption under § 301. An examination of the pendent state law claims set forth in the fifth, sixth and eighth causes of action of the Partnership's second amended crossclaims reveals that the factual predicate for the Partnership's tortious interference with prospective economic advantage, slander of title, breach of contract and tortious interference with contract claims is identical to the facts which underlie its copyright infringement claim. Essentially, the Partnership alleges that the purported cancellation of the August 8, 1962, publishing agreement, the filing of the new copyright claim in April 1986 on behalf of Wanessa and the improper notices sent to performing rights societies and subpublishers serve as a basis for each of these claims.

Thus, if the essence of the Partnership's state law claims is that the composers, by the above-mentioned acts, caused unautho-

rized performances of "Pepino" to occur, then the state law claims are within the scope of the Copyright Act and, therefore, preempted by federal law. The court is unable to make this determination, however, since, as noted earlier, the Partnership has not demonstrated whether the conduct of the composers resulted in any direct infringement of the "Pepino" copyright. Nonetheless, because a more fully developed factual record may result in a finding of preemption of all of the Partnership's state law claims, other than its abuse of process claim, the court will refrain from addressing the merits of the Partnership's tortious interference with prospective economic advantage, slander of title, breach of contract and tortious interference with contractual relations crossclaims.

*Abuse of Process*

The facts underlying this cause of action are simple and undisputed. On August 4, 1986, the composers filed crossclaims against the Partnership in the Partnership's infringement action, requesting damages for (1) the Partnership's delay in initiating an infringement suit against the Orion defendants, (2) breach of contract and (3) a mixed contract-tort cause of action based on the same facts. One day later, on August 5, 1986, the composers filed an action in the Superior Court of New Jersey, Law Division, Bergen County, against the Partnership and CBS, Inc., alleging virtually the same "delay" cause of action. The state action was placed on "inactive status" pending the outcome of the federal suit following a motion for dismissal of the state lawsuit by the Partnership. On August 13, 1987, this court granted the Partnership summary judgment on the composers' crossclaims, and shortly thereafter the state "delay" action was dismissed based upon the *res judicata* effect of this decision.

The Partnership contends that the filing of the state action alleging the same cause of action as the federal action was a misuse of the judicial system constituting an abuse of process. The composers do not dispute the factual basis for this claim, but argue only that their conduct did not constitute a misuse of legal process as a matter of law.

The Partnership's labeling of its claim as one for "malicious abuse of process" while citing case law which defines the tort of "malicious use of process" ignores the distinction between these two causes of action under New Jersey law. In the case of *Ash v. Cohn,* the New Jersey Court of Errors and Appeals explained the difference between the two torts as follows:

An action for malicious abuse of process is distinguished from an action for malicious use of process in that the action for abuse of process lies for the improper, unwarranted and perverted use of process after it has been issued while that for the malicious use of it lies for causing process to issue maliciously and without reasonable or probable cause.... Thus it is said, in substance, that the distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law.

119 N.J.L. 54, 58, 194 A. 174 (E. & A.1937) (citations omitted).

 The elements of the tort of abuse of process are (1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of the process. *Fielder Agency v. Eldan Constr. Corp.,* 152 N.J. Super. 344, 348, 377 A.2d 1220 (Law Div. 1977). Hence, a necessary requirement of this cause of action is that the litigator perform some act subsequent to the issuance of process which represents the perversion or abuse of the legitimate purposes of that process. *Tedards v. Auty,* 232 N.J. Super. 541, 549, 557 A.2d 1030 (App.Div. 1989); *Penwag Property Co., Inc. v. Landau,* 148 N.J.Super. 493, 499, 372 A.2d 1162 (App.Div.1977), *aff'd,* 76 N.J. 595 (1978); *Gambocz v. Apel,* 102 N.J.Super. 123, 130–31, 245 A.2d 507 (App.Div.), *certif. denied,* 52 N.J. 485, 246 A.2d 447 (1968). Under the above definition, an action for abuse of

process will not lie against a party unless that party has demonstrably used process after its issuance solely to coerce or injure his adversary. *Tedards v. Auty,* 232 N.J. Super. at 548–49, 557 A.2d 1030. Bad motives or malicious intent leading to the institution of a civil suit are insufficient to support this cause of action. *Fielder Agency v. Eldan Constr. Corp.,* 152 N.J. Super. at 348, 377 A.2d 1220.

■ To the extent that the Partnership is alleging a cause of action based on malicious abuse of process, it is clear that such a claim must fail as a matter of law. There is no proof before the court and the Partnership has not alleged that the composers, having commenced their "delay" action in state court, then committed some further act to coerce or injure the Partnership in any way which would constitute a perversion of the legal process. The court is of the opinion, however, that, although the Partnership has labeled its claim as an "abuse of process" claim, it intended to ground its cause of action on the tort of malicious use of process. Nevertheless, for the reasons stated below, the court concludes that this claim must also fail as a matter of law.

■ First, the court notes that, because there is a strong public policy against inhibiting people from seeking redress in the courts, malicious use of process is not a favored cause of action. *Penwag Property Co., Inc. v. Landau,* 76 N.J. 595, 597, 388 A.2d 1265 (1978). To prevail on a claim of malicious use of process, a litigant must establish the following elements: (1) the suit was brought without probable cause, (2) plaintiff was actuated by malice, (3) the action terminated in plaintiff's favor and (4) a special grievance was suffered. *Penwag,* 76 N.J. at 598, 388 A.2d 1265; *Tedards v. Auty,* 232 N.J.Super. at 549, 557 A.2d 1030. At least two of the above four elements are absent from the instant case. First, although the composers' "delay" cause of action was terminated in this court in favor of the Partnership, it does not follow that the claim was completely baseless or frivolous or that the composers were without probable cause to

institute such an action. The court does not condone the institution of multiple litigations in different forums arising out of the same dispute. Nonetheless, while a party who institutes the same lawsuit in different forums may be guilty of vexatious litigation under appropriate circumstances, the fact that a party institutes litigation in state court at the same time that an identical action is pending in federal court does not mean that the state court action lacked probable cause.

■ Second, the Partnership has failed to demonstrate or even allege that it suffered a special grievance as a result of the state court action. Under New Jersey law, the special injury or grievance required to support a claim of malicious prosecution of a civil suit is some interference with a party's personal liberty or property. *Penwag Property Co., Inc. v. Landau,* 76 N.J. at 598, 388 A.2d 1265; *Fielder Agency v. Eldan Constr. Corp.,* 152 N.J.Super. at 349, 377 A.2d 1220. It is well settled that ordinary litigation expenses such as counsel fees and costs incurred in defense of the action do not constitute a special grievance. *Penwag,* 76 N.J. at 598, 388 A.2d 1265; *Fielder,* 152 N.J.Super. at 349–50, 377 A.2d 1220. The Partnership's "abuse of process" crossclaim is bereft of any allegation that, due to the institution of the Superior Court action, it suffered an injury or special grievance other than the costs of defending the suit.

■ Although the composers have not cross-moved for summary judgment on the Partnership's abuse of process claim, it is within the court's discretion to enter summary judgment in favor of an opposing party, despite the absence of an application for such relief, where the undisputed facts show that the nonmoving party is entitled to such relief. *Weil Ceramics & Glass, Inc. v. Dash,* 618 F.Supp. 700, 716 (D.N.J. 1985), *rev'd in part, vacated in part on other grounds,* 878 F.2d 659 (3d Cir.1989). It is clear that the relief the Partnership seeks is more in the nature of sanctions, an issue which the court has reserved until the

final resolution of this litigation.[13] The court concludes that on the undisputed facts the composers are entitled to summary judgment on the Partnership's abuse of process crossclaim.

*The Composers' Cross–Motion for Breach of Fiduciary Duty*

The composers, Merrell and Allen,[14] contend that the 1962 publishing agreement, in which the composers assigned all of their rights, title and interest to the copyright of "Pepino" to Romance, and which ultimately was reassigned through a series of assignments to the Partnership, created a fiduciary relationship between the composers and the publisher, SBK Partnership. The composers further contend that the Partnership breached its fiduciary duty to the composers by entering into a collusive settlement agreement with the Orion defendants, knowing that the composers would derive no monetary damages from the settlement agreement and that the agreement would result in a dismissal of the composers' infringement action against the Orion defendants. The Partnership denies the existence of a fiduciary duty and has cross-moved for dismissal of the composers' claim as a matter of law. Assuming that the court finds that a fiduciary duty is established by a publisher-author agreement in which all rights, interest and title to a copyright are assigned in exchange for royalties, the Partnership also cross-moves, in the alternative, for summary judgment, asserting that its conduct in settling the infringement action against the Orion defendants does not constitute a breach of that duty.

■ Paragraph 4 of the composers' crossclaim alleges the following:

4. The terms of the [1962] publishing agreement created a trust relationship between the composers and the publisher and imposed both explicitly and impliedly a fiduciary duty on the publisher vis-a-vis the composers.

A review of the 1962 publishing agreement discloses no language or terms which give rise to an express obligation on the part of the Partnership to act as a fiduciary for the composers. Thus, the issue before the court is whether, under New York law,[15] a fiduciary duty is imposed on a publisher who has been assigned all of an author's rights to a copyrighted work in exchange for royalties. If such a duty is imposed by law upon the publisher, the court must next determine whether that fiduciary duty is breached when a publisher enters into a settlement agreement with alleged infringers which is opposed by the authors of the work, which does not result in any monetary benefit to the authors and which, by its terms, grants the publisher control over the alleged infringing work.

The most recent pronouncement on the issue of whether a publisher with exclusive rights in a particular work is deemed a fiduciary, under New York law, for the author's retained interest in that work is *Mellencamp v. Riva Music, Ltd.,* 698 F.Supp. 1154 (S.D.N.Y.1988), a case conspicuously absent from the composers' brief. In *Mellencamp,* a composer brought suit against the recording companies to whom he had assigned the copyrights to the musical compositions authored by him in exchange for royalties, asserting, among other claims, that, by virtue of the publishing agreements, the recording companies became fiduciaries for the composer's interests and that the recording compa-

---

13. The court noted that in *Atkinson v. Pittsgrove Township,* a case cited by the Partnership in support of its abuse of process crossclaim, the $500.00 penalty imposed upon the plaintiff by the New Jersey Superior Court for instituting the same cause of action for the fourth time was a sanction for having engaged in harassment and vexatious litigation, and was not based on a showing of malicious use of process. 193 N.J. Super. 23, 30–33, 471 A.2d 1215 (Ch.Div.1983).

14. Although the composers include Brown as a party requesting this relief, Brown was, at the time of the first assignment, the composers' manager and a principal of Romance, the original assignee. Subsequently, Romance assigned all of its rights to Unart; therefore, Brown lacks standing to bring this claim.

15. The parties agree that the contractual rights of the parties under the 1962 publishing agreement are governed by the law of New York, the place of contracting.

nies breached their fiduciary duties by failing to promote his songs actively and use their best efforts to obtain all the monies rightfully due him from third parties. The United States District Court for the Southern District of New York granted the recording companies' motion to dismiss these claims, pursuant to Fed.R.Civ.P. 12(b)(6), holding that the conventional publisher-author licensing arrangement does not create a per se fiduciary relationship between the parties, but that "'trust elements' in a publisher-author relationship come into play when the publisher tolerates infringing conduct ... or participates in it...." *Mellencamp*, 698 F.Supp. at 1159 (citations omitted).

In reaching its conclusion, the district court analyzed in great detail the New York case law on this subject, including those cases relied upon by the composers in support of their contention that a publisher with exclusive rights in a work is a fiduciary for the author's interest. The *Mellencamp* court found the New York Court of Appeals' decision in *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142, *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972), to be controlling. In *Van Valkenburgh*, an author and a publisher entered into a written agreement under which the publisher agreed to publish a series of books about electricity written by the author. 30 N.Y.2d at 42, 330 N.Y.S.2d at 331, 281 N.E.2d at 144. Under the terms of the contract, the publisher agreed to pay the author 15% of the list price of the books sold and to use its "best efforts" in promotion of the book. 30 N.Y.2d at 43, 330 N.Y.S.2d at 331, 281 N.E.2d at 144. After the publisher published a new group of books on the same subject which directly competed with the author's books and halted advertisement of the original series, the author brought suit for breach of contract and unfair competition. *Id.* The Appellate Division of the Supreme Court reversed the trial court's finding that the publisher occupied a fiduciary relationship to the author and, instead, held that the publisher had breached its contractual undertaking to use its "best efforts" in promoting the author's books. *Van Valkenburgh*, 30 N.Y.2d at 44, 330 N.Y.S.2d at 332, 281 N.E.2d at 144. Hence, the relationship was one of contract. The New York Court of Appeals affirmed, stating that "it could be found, as a matter of law, on the record, that there was no fiduciary relationship." *Id.*

Thus, while the *Van Valkenburgh* court did not preclude the existence of a fiduciary relationship between the parties to a publishing agreement, it is clear that under New York law a royalty or percentage arrangement does not, by itself, give rise to a fiduciary relationship. *Mellencamp*, 698 F.Supp. at 1157–58; *Lane v. Mercury Record Corp.*, 21 A.D.2d 602, 252 N.Y.S.2d 1011, 1012 (1st Dept.1964), *aff'd*, 18 N.Y.2d 889, 276 N.Y.S.2d 626, 223 N.E.2d 35 (1966). Nevertheless, a breach of trust has been found where a publisher stole the title of a plaintiff's song for another musical composition published by it and successfully promoted the infringing and competing work while failing to promote plaintiff's song (*see Nelson v. Mills Music Co., Inc.*, 278 A.D. 311, 104 N.Y.S.2d 605 (1st Dept. 1951), *aff'd*, 304 N.Y. 966, 110 N.E.2d 892 (1953)), and tort liability was found to follow where a publisher refused to fill orders, withdrew the copyrighted work from sale, and refused to transfer to plaintiffs the copyright, stock and other rights to the work for the deliberate purpose of injuring the plaintiffs (*see Schisgall v. Fairchild Publications, Inc.*, 207 Misc. 224, 137 N.Y. S.2d 312 (Sup.Ct.N.Y.Co.1955)).

It is clear from the above that, while fiduciary duties per se are not imposed upon a publisher in an exclusive licensing agreement, the parameters of the legal relationship between an author and publisher of a copyrighted work are defined on a case-by-case basis and will depend in large part on the conduct of the parties and the circumstances of the case. *See Warfield v. Jerry Vogel Music Co., Inc.*, 1978 Copyright L.Rep. (CCH) para. 25,005 at 15,033, 1978 WL 944 (S.D.N.Y. March 21, 1978). It is also clear that trust principles are implicated only in those cases where the publisher tortiously engages in

infringing conduct or deliberately tolerates infringing conduct by others. *See Mellencamp*, 698 F.Supp. at 1158–59. Keeping the above in mind, the court will now examine the Partnership's conduct with regard to the settlement agreement reached with the Orion defendants.

■ The composers assert that the settlement agreement entered into by the Partnership with the Orion defendants was the result of collusion between the two parties. In support of this assertion, the composers point to the following facts: (1) prior to the settlement agreement the Partnership did not take the depositions of either the composers or any of the Orion defendants; (2) the Partnership was aware before settlement that the composers possessed expert reports which stated that 48 out of 52 notes to the verse of "Agita" matched identically with 48 notes to the verse of "Pepino"; (3) the Partnership knew that by settling the infringement action, the composers' infringement suit, an action litigated extensively since 1985, would be dismissed, and discovery of the Orion defendants' financial records would be foreclosed to them; (4) the Partnership settled knowing that the composers would not receive any monetary consideration from the $50,000.00 settlement because the funds would be consumed in attorney's fees; (5) the Partnership settled the action over the objections of the composers; (6) as a part of the settlement agreement, the Partnership is to take control of the infringing work "Agita"; and (7) to date, there has been no execution of a written retroactive license or release and no payment of a license fee.

The Partnership, for the most part, does not dispute the above facts. Instead, it argues that the settlement agreement was the result of a well-reasoned business judgment on its part, and a decision which was well within its rights to make. The Partnership asserts that, while its expert reports and those of the composers stated that "Agita" was copied in large part from "Pepino," the Orion defendants had an expert report which stated otherwise and, furthermore, which put the copyrightability of "Pepino" into question. Rather than put the validity of the "Pepino" copyright before a jury, the Partnership settled its infringement suit for an amount it considered to be a fair market value for the use of "Pepino." (*See* Lightstone Aff., ¶¶ 11, 12.) With regard to the fact that the composers would not receive any of the settlement funds, the Partnership points out that the composers are in large part responsible for driving up the substantial litigation costs in this action, which must, under section 7(a) of the publishing agreement, be deducted from the settlement funds.

The Partnership concedes that, under the terms of the settlement agreement, control of the infringing work "Agita" is placed in its hands and, further, that as of this date no license fee has been paid, and the retroactive written license has not been executed. The Partnership asserts, however, that any use of "Pepino" by "Agita" is subject now to the retroactive license and by taking control of "Agita" it could also control any future "competition" of that song with "Pepino." The Partnership also states that the reason the license agreement has not yet been formalized and fees have not been paid is that the parties are awaiting the final resolution of this litigation, since the composers have stated their intention to appeal this court's August 13, 1987, decision, in which the court found the Partnership to be a 50% copyright holder and exclusive publisher of "Pepino."

■ The court notes initially that under New York law a breach of trust between a publisher and an author will be found only in circumstances where a publisher's conduct is truly egregious, as where a publisher engages in infringing conduct or deliberately tolerates infringement by others. *See Mellencamp*, 698 F.Supp. at 1159, and the cases cited therein. Outside of these circumstances, any liability imposed on a publisher for engaging in conduct that allegedly deprives an author of his benefits under a publishing agreement is contract rather than tort-based. *Mellencamp*, 698 F.Supp. at 1157–59.

The court has combed the rather voluminous record which has accumulated in this litigation, and specifically in connection with the present motion, to find some evidence of collusion between the Partnership and the Orion defendants and has discovered none. The facts relied on by the composers in support of their motion do not support a finding of collusion, and many of them are irrelevant with regard to whether the Partnership acted within its rights in settling the infringement action. The papers submitted by the composers clearly evidence their anger at having control over the infringement action taken from them (*i.e.*, the composers' assertion that the Partnership "could have walked away from this litigation"), as well as their great dissatisfaction with the settlement agreement; however, the fact that the composers opposed the settlement does not mean that the Partnership, in settling, acted outside of its rights as exclusive publisher or acted in collusion with the Orion defendants.

It is true that the composers will not see any of the funds obtained from the settlement of the infringement action. Section 7(a) of the 1962 publishing agreement provides, *inter alia*, that the composers shall receive 50% of any compensation obtained by the publisher as a result of an infringement action, but only after the deduction of the costs incurred in litigation. The litigation costs in this action far surpass the amount of settlement; however, the composers must bear some responsibility for this result, since they opposed the Partnership's attempt to intervene in their suit, forced the Partnership to institute its own separate action against the Orion defendants and then opposed the Partnership's motion to consolidate these actions.

Finally, obtaining control of "Agita" does not rise to the level of tolerating infringement by others. Any use of "Agita" is subject to the retroactive license, and thus "Agita" can no longer be characterized as an infringing work. Although New York law is less than clear in this area, there is authority which indicates that, absent deliberate tortious conduct, a publisher with exclusive rights over the distribution of an author's work does not commit a breach of trust by engaging in acts which may indirectly tend to diminish the value of the copyrighted property, including the promotion of a competing work. *See Warfield v. Vogel,* 1978 Copyright L.Rep. (CCH) para. 25,005 at 15,032, 1978 WL 944. Moreover, there is no evidence in the record which indicates that the Partnership has promoted or will promote "Agita" while at the same time neglecting to promote "Pepino."

Accordingly, for the reasons stated above, the court concludes that the Partnership did not commit a breach of trust by settling the infringement action. Thus, the composers' motion for summary judgment on their breach of fiduciary duty claim is denied, and the Partnership's cross-motion for summary judgment on this claim is granted.

## Rule 37 Sanctions

The composers' motion for Rule 37 sanctions dismissing the Partnership's cross-claims merits little discussion. The request for sanctions stems from the difficulties the composers experienced in deposing James F. Lightstone, the Vice President for Business Affairs of the Partnership. When the parties could not come to an agreement, Magistrate Wolfson, having already sanctioned both parties once in connection with this matter, issued an order on May 1, 1989, which provided that the Lightstone deposition would be taken either on May 16, 1989, or on May 22, 1989. When Mr. Lightstone was unavailable for the May 16, 1989, deposition date, the deposition was set for May 22, 1989. Then, in a confidential communication with the court, the deponent requested that he be permitted a two-hour hiatus from the deposition, from 10:30 A.M. to 12:30 P.M. on May 22, 1989, to attend to a personal matter. Counsel for the composers objected; nevertheless, Magistrate Wolfson issued an order on May 18, 1989, granting the deponent's request. Despite the court's amended order, counsel for the composers refused to attend the May 22, 1989, deposition. Mr. Lightstone was finally deposed on June 23, 1989. After having refused to comply with Magistrate Wolfson's May 18, 1989, amended order, counsel for the composers now moves for Rule 37 sanctions

against the Partnership. The motion is completely meritless, and the court is astounded that counsel for the composers has the temerity to bring it. The motion is denied.

Accordingly, for the reasons stated above, the Partnership's motion for summary judgment is denied with respect to its copyright infringement claim and its state law claims, and its request for sanctions pursuant to Rule 11 or 28 U.S.C. § 1927 is also denied. Summary judgment is granted to the composers, however, on the Partnership's abuse of process claim. With regard to the composers' breach of fiduciary duty claim, summary judgment is granted to the Partnership and denied to the composers. The composers' motion for Rule 37 sanctions is likewise denied. An order accompanies this opinion. No costs.

### ORDER

This matter having been opened to the court on motion of plaintiff-crossclaimant SBK Catalogue Partnership (the "Partnership"), by Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., Jeffrey Barton Cahn, Esq., appearing, for summary judgment, pursuant to Fed.R. Civ.P. 56, on its crossclaims of copyright infringement, tortious interference with prospective economic advantage, slander of title, abuse of process, breach of contract and tortious interference with contractual relations; the cross-motions of the Partnership and plaintiffs-crossclaimants Merrell, Allen and Brown (the "composers"), by David Hoffman, Esq., for summary judgment on the composers' breach of fiduciary duty crossclaim; the motion of the Partnership for sanctions pursuant to Fed.R.Civ.P. 11 or 28 U.S.C. § 1927 and the motion of composers for sanctions pursuant to Fed.R. Civ.P. 37; and the court having carefully considered the papers submitted in support thereof and in opposition thereto and the arguments of counsel; and for good cause shown,

IT IS on this 13th day of September, 1989,

ORDERED that the Partnership's motion for summary judgment be and hereby is denied with regard to all of its crossclaims; and it is further

ORDERED that the composers be and hereby are granted summary judgment on the Partnership's abuse of process crossclaim; and it is further

ORDERED that the Partnership's cross-motion for summary judgment on the composers' breach of fiduciary crossclaim be and hereby is granted, and the composers' cross-motion for summary judgment on this claim be and hereby is denied; and it is further

ORDERED that the Partnership's motion for sanctions pursuant to Fed.R.Civ.P. 11 or 19 U.S.C. § 1927 be and hereby is denied; and it is further

ORDERED that the composers' motion for Rule 37 sanctions be and hereby is denied.